1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT

9    SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  George V. Austin, | Case No.:  15cv309-BAS (BLM) |
| 12                              Petitioner, | **REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT** |
| 13  v. | **OF HABEAS CORPUS AND ORDER DENYING REQUEST FOR EVIDENTIARY** |
| 14  R. GROUNDS, Warden, | **HEARING** |
| 15                              Respondent. | **[ECF No. 1]** |

16

17          This Report and Recommendation is submitted to United States District Judge Cynthia

18    Bashant pursuant to 28 U.S.C § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United

19    States District Court for the Southern District of California.  On February 12, 2015, Petitioner,

20    George V. Austin, a state prisoner proceeding *pro se* and *in forma pauperis*, commenced these

21    habeas corpus proceedings pursuant to 28 U.S.C. § 2254.  ECF No. 1 ("Pet.").  Petitioner

22    challenges the validity of his state court conviction for robbery, and the finding that he

23    committed robbery, two counts of assault by means likely to produce great bodily injury, and

1

two counts of assault with a deadly weapon and by means of force likely to produce great bodily injury, for the benefit of a criminal street gang.  See Id. at 2.  Respondent answered on June 24, 2015.  ECF No. 10 ("Ans.").  Petitioner's Traverse was filed on December 7, 2015.[1] ("Trav.")

This Court has considered the Petition, Answer, Traverse and all supporting documents filed by the parties.  For the reasons set forth below, this Court **RECOMMENDS** that Petitioner's Petition for Writ of Habeas Corpus be **DENIED**.

## **FACTUAL AND PROCEDURAL BACKGROUND**

The following facts are taken from the California Court of Appeal's opinion in People v. Price and Austin, Appeal No. D060993.  See Lodgment 5.  This Court presumes the state court's factual determinations to be correct, absent clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); see also Parke v. Raley, 506 U.S. 20, 35 (1992) (holding findings of historical fact, including inferences properly drawn from such facts are entitled to statutory presumption of correctness).

> Heveen Toma managed the Moonlight Market (store) located within the territory of the East Side Skyline Piru criminal street gang (Skyline gang) in the Skyline neighborhood of San Diego.  In the evening of April 5, 2011, store employee Mukhles Daud was working the register while Heveen, Heveen's cousin Karlos Toma and store employee Salwan Toma were busy loading cases of Hennessy liquor onto a truck parked in the store parking lot for transport to another location.  As Karlos guarded the truck, Heveen, assisted by Salwan, used a dolly to take the cases from the storeroom, through the front door of the store, to the truck.  Each case contained twelve 750 milliliter bottles of Hennessy, and each bottle sold for $30.  Approximately 35 cases were loaded into the bed of the truck, and 20 smaller cases were loaded inside the truck's cabin.

---

[1]  The Traverse was due on July 27, 2015.  ECF No. 9.  The Court received Petitioner's Traverse on December 7, 2015, and accepted the document on discrepancy on December 8, 2015.  ECF No. 13.  Petitioner claims that he submitted his Traverse on July 1, 2015.  ECF No. 14 at 1-2.  Although there is no evidence substantiating Petitioner's claim [see Docket], the Court accepts the Traverse and will consider the document.

The jury viewed video taken from multiple surveillance cameras at the store that showed a black vehicle driven by a man later identified as Austin back into a parking space in front of the store.  Five men, including Austin, exited the car.  As Heveen came through the front door of the store with a dolly loaded with cases of Hennessy, the surveillance video shows Austin and another man later identified as Norman Berry smacking the cases of Hennessy.  Heveen testified the men loudly said, "'oh, this is mine'" and "'give me that'" as they did so.  Heveen continued walking to the truck to finish unloading the cases and returned to the store.  Meanwhile, Austin purchased a bottle of Hennessy.

When he came back outside, Heveen observed Austin and Berry in a loud tone say to Karlos, "where are you guys going with that" and "give me that" and "I want to take some of that," referring to the cases of Hennessy.  Karlos responded, "You guys just have yourselves a good night.  We're just doing our jobs."  As Heveen loaded the cases of Hennessy onto the truck, Austin and Berry continued to ask where they were taking the Hennessy.  Heveen testified he then went back into the store and told Salwan, "'hurry up'" and "'let's try to finish,'" because he was concerned Austin, Berry and the rest of their group would attempt to take the Hennessy.

Heveen next heard Austin and Berry say, "'this is Skyline,'" "'[w]e're going to follow you wherever you're going to go [with the cases]'" and "'this is our area.'"  Heveen testified he associated these words and/or expressions with the fact that the men, including Austin and Berry, were part of a gang that was from the Skyline area, inasmuch as at the time of the incident Heveen had worked at the store for more than three years and knew gangs were located in the area.  Berry also began "throwing gang sings up" as he and Austin paced back and forth in front of the store.

Heveen testified that just as they finished loading the Hennessy, Austin got into the black car and slowly moved it to another part of the store parking lot.  Austin then exited the car and said, "'Now you're blocked in.  You're not going to go anywhere."  As this was occurring, Barry continued "throwing up . . . gang signs" and repeated "'this is Skyline'" and "'this is our area,'" and words to that effect.

After Austin threw a two-liter soda at Heveen and Karlos, Austin came around his car and said, "This is our Area.  You guys are not going anywhere.  We're going to take your shit.'"  Austin and Berry also said, "'this is Piru territory'" and repeated, "'this is Skyline.'"  The two also made gang signs with their hands.

Heveen testified that Karlos told him to call the police.  Heveen called 911, but was unable to get an operator on the line.  Nonetheless, at Karlos's suggestion, Heveen pretended to speak to the police on his phone because he

was fearful of being robbed and hoped Austin, Berry and the others would just leave.

Austin, Berry and the others then got back in the black car.  Before Berry got into the car, Heveen testified Berry went to the passenger side of the car and appeared to retrieve something and put it in his back pocket, such as a weapon.  Berry then said, "I got something for you."  After they were all in the car, Heveen testified Austin revved the engine and, as also shown by the video, then drove the car towards Karlos, clipping him on the shin and causing him to fall onto the hood of the car.

As shown in the video and testified to by Heveen, Karlos then stood up on the hood of the car and stomped on the car's windshield.  The windshield cracked.  As the black car started backing up, Karlos jumped off the hood, took off his jacket and angrily said, "'Now come on.  Get out [of] the car.'"  The video shows Karlos then hitting the passenger side window of the car, which also was confirmed by Heveen's testimony.

The black car driven by Austin left the parking lot.  Heveen testified the car quickly stopped next to a utility box, and the group of men then got out of the car and charged them.  Heveen testified and the video surveillance from the store shows that Berry took a swing at Heveen, and Heveen swung back.  Heveen also testified Austin had a knife estimated to be about five inches long in his hand when he got out of the car and came at Karlos, but Karlos grabbed a trash can lid and used it as a shield to ward off the attack.  As the other men were attacking Karlos, Austin went to the truck loaded with Hennessy, grabbed two cases and threw them to the ground.  Austin then tried to open the cases.

After Austin threw a third case of Hennessy to the ground, Heveen testified a group of about 10 to 15 people, including Price, came on the scene from the direction of Skyline.  Some of these people joined in the fight.  Others started throwing bottles of Hennessy at Heveen and Karlos from one of the cases Austin had thrown to the ground.  Austin threw a bottle of Hennessy at Karlos, but he missed and the bottle hit the ground and shattered.  Price punched Karlos and unsuccessfully attempted to hit Karlos with a bottle.

During the melee, Karlos was knocked to the ground.  As Karlos lay on the ground, he was kicked and punched, including by a man in a black shirt later identified as Laquan Jordan who used his fists to "pound[] away" at Karlos.  At the same time Jordan was punching Karlos in the face, Austin tried to stab Karlos.  Several others also kicked Karlos, including Price.  Heveen testified that he also saw Price throw a bottle of Hennessy at Karlos while Karlos lay on the ground.

While Karlos appeared to be unconscious on the ground, people were yelling "beat his ass."  In an effort to assist Karlos, Heveen punched Austin, who

4

in turn swung the knife at Heveen but missed.  After a woman punched Heveen in the face, he got angry, picked up a bottle of Hennessy and threw it at Jordan, who was still punching Karlos.  The bottle struck Jordan in the chest.

Austin next ran to the driver's side of the black car and got inside.  The others in the group followed, and the car driven by Austin left.  Heveen saw Price and others run away.  Heveen checked on Karlos, who lay motionless on the ground.  As Heveen approached, he could hear Karlos "was having trouble breathing."  Karlos's face was bloody, and his nose appeared to be badly broken. Salwan testified Karlos's body was "shaking," and Karlos was unresponsive.

Because Heveen estimated he had waited about six minutes for dispatch to pick up his 911 call, Heveen called the El Cajon Police Department, who was in the process of transferring the call to the San Diego Police Department when Heveen flagged down a patrol car passing the store and reported the crime.

During the incident, Heveen was struck by three thrown bottles of Hennessy. Salwan and Mukhles also were struck by thrown bottles.  Additionally, during the attack, Salwan testified he heard the words "Blood" and "Piru" being yelled by the attackers.

John Frazier testified he observed the attack from his vehicle while stopped at a stoplight near the store.  From the car, he could smell something "strange in the air" and determined it was a "liquory" smell.  He saw a group of African-American men trying to steal liquor from a parked truck that was being "frantically" defended by another man.  Frazier said the group "viciously" attacked the man, including throwing bottles at him and kicking him while he lay on the ground.  Frazier called 911 and then saw a group of men involved in the attack get inside a "dark-colored" sedan and speed away.  Frazier followed the speeding sedan for a few miles in an unsuccessful attempt to obtain a license plate number.

Patricia Ennis testified she observed the attack from the bus she was driving.  Surveillance video of the incident taken from cameras on the bus was shown to the jury.  Ennis stopped the bus and observed bottles being thrown by at least six African-American males at a man that she previously had seen yelling at occupants of a black car that was moving very slowly in the store parking lot. Shortly thereafter, Ennis saw the man who had been standing in the middle of the parking lot on the ground and observed several African-American men punching him.  Ennis radioed dispatch and reported the attack.  Ennis later told police she saw some of the men in the group take some of the bottles.

Karlos suffered numerous cuts and abrasions, and his broken nose required plastic surgery as a result of the attack.  Karlos spent two or three days in the hospital following the attack.

Police at the scene observed several broken bottles and areas of liquid on the asphalt of the store parking lot.  Police estimated there were eight broken bottles and 12 bottles missing from the cases.  Heveen testified that 36 bottles of Hennessy were broken, damaged or missing as a result of the incident and valued the store's loss at about $1,000.

Police reviewed the video surveillance of the attack and recognized Austin as one of the attackers.  Salwan and Mukhles each identified Austin in separate photographic lineups.

. . .

San Diego Police Detective Jon Brown testified as the prosecution's gang expert.  Detective Brown was a member of the gang unit and, as both a detective and a patrol officer, had investigated over 200 crimes involving the Skyline gang.  Additionally, Detective Brown contacted hundreds of Skyline gang members and reviewed arrest reports and field interviews related to the Skyline gang.

Detective Brown testified that the Skyline gang then had about 400 members, it has been in existence since the 1970's, it is a "Blood set," and its primary color is red.  The Skyline gang is comprised of several smaller gangs, including one known as the O'Farrell Park gang.  According to Detective Brown, the Skyline gang's primary rival is the Lincoln Park gang, also a "Blood set."

Detective Brown testified he was familiar with Austin based on his own contacts with Austin, his review of documents, including field interviews and from speaking with other law enforcement.  Based on that information and based on Austin's admission of being a gang member, Austin's gang-related tattoos including "8 Piru 0" across his chest and from his review of the surveillance video showing Austin making hand signs that were consistent with the Skyline gang, Detective Brown opined that Austin was a member of the Skyline gang, going by the monikers "Gee" and "Monkey Blood."  Austin was known to associate with about 15 Skyline or O'Farrell Park gang members.

. . .

Given a hypothetical situation consistent with the facts involving the instant offenses in which four or five Skyline gang members came to a market located in their gang territory, harassed employees of the market and demanded alcohol while mentioning and/or displaying their gang affinity, and ultimately beat one of those employees while throwing gang signs, Detective Brown opined these hypothetical crimes were committed for the benefit of and in association with a criminal street gang.

1

2

3

4

5

6

7

8

9

   In that instance, Detective Brown noted there was a clear "association because the gang members are acting with each other.  They're telling the victims whatever gang set they're from, so they're not only assaulting them, but they're letting them know who it is, which is going to create fear in the community.  [¶]  So the gang members get status because they're putting in violent acts to up their status, and the gang gets the benefit because any time you get violent gang members, that reflects upon the gang and now the gang gets to be known as more violent, not only to rival gang members, but to community members that go to that market or just live in the area and happen to see it on the news."

   Detective Brown further opined that in considering the facts of the same hypothetical, such conduct by the gang members would promote, further or assist criminal conduct by the gang members because in that hypothetical instance gang members are "working as a team; they're backing each other up. So even though one kind of starts to fight, they all jump in and they work as a team to have a group attack against the victims."

10

Lodgment 5 at 3-12.

11

   On June 9, 2011, the San Diego County District Attorney filed a five-count information

12

charging Petitioner with robbery in violation of California ("Cal.") Penal Code § 211 (count 1),

13

two counts of assault by means likely to produce great bodily injury in violation of Cal. Penal

14

Code § 245(a)(1) (counts 2 and 3), and two counts of assault with a deadly weapon and by

15

means of force likely to produce great bodily injury in violation of Cal. Penal Code § 245(a)(1)

16

(counts 4 and 5).   Lodgment 1 at 1-5.   The information further alleged that Petitioner

17

committed the offenses charged in Counts 1-5 for the benefit of a criminal street gang in

18

violation of Cal. Penal Code § 186.22(b)(1), personally inflicted bodily injury upon a victim

19

during the commission of the offenses charged in counts 1 and 3, as defined in Cal. Penal

20

Code § 12022.7(a), and served one prior prison term within the meaning of Cal. Penal Code

21

§§ 667.5(b), 668.  Id.  Following a trial, on September 16, 2011, a jury found Petitioner guilty

22

on counts 1 through 5.  Id. at 413-17.  The jury found true the gang enhancements on

23

counts 1 through 5, and not true the great bodily injury enhancements.   Id.   Petitioner

1    admitted the prison term prior.  Id. at 418.  On November 29, 2011, the trial court sentenced

2    Petitioner to seventeen years in state prison.  Id. at 420-21.

3         On July 5, 2012, Petitioner appealed his conviction to the California Court of Appeal,

4    arguing that (1) there was insufficient evidence to support his robbery conviction in count 1,

5    (2) the trial court erred in failing to instruct the jury on simple theft as the lesser included

6    offense of robbery in count 1, (3) the trial court erred when it instructed the jury on the gang

7    enhancement, and (4) that Petitioner's abstract of judgment should be corrected to reflect the

8    proper criminal conviction.  Lodgment 3 at 13-44.  Petitioner also joined "in all issues" that

9    may "redound or accrue to his benefit" raised by Keshawn Price, his co-defendant and co-

10   appellant, including Price's claim that he was denied a fair trial when the trial court refused to

11   bifurcate the trial of the gang enhancement allegation from the underlying substantive

12   offenses.  See Lodgment 3 at 45; see also Lodgment 5 at 17.  On July 29, 2013, the Court of

13   Appeal affirmed the trial court's judgment, but directed the trial court to correct the abstract of

14   judgment.[2]  See Lodgment 5.

15        Petitioner subsequently filed a petition for review in the California Supreme Court

16   alleging the following: (1) a robbery is not committed where, during a fight, the defendant

17   destroys the property of the other combatant without any removal of the property from the

18   _____

19   [2]   Petitioner argued on appeal, and the People agreed, that Petitioner's abstract of judgment
      had to be corrected to reflect proper convictions because it stated that Petitioner was
20   convicted of "assault with deadly weapon" on counts 2 through 5, whereas the verdict forms
      read that Petitioner was convicted of "assault by means likely to produce great bodily injury"
      on counts 2 and 3, and of "assault with deadly weapon/force likely to cause GBI [great bodily
21   injury]" in counts 4 and 5.  See Lodgments 3 at 43-44; 4 at 51-52.  The California Court of
      Appeal directed the trial court to correct Petitioner's abstract of judgment to "show that
22   [Petitioner] was convicted of 'assault by means likely to produce great bodily injury' in counts
      2 and 3, and of 'assault with deadly weapon/force likely to cause GBI [great bodily injury] in
      counts 4 and 5."  Lodgment 5 at 48.

23

scene or apparent intent to take the property, and (2) the failure to instruct on Cal. Penal Code § 186.22 technical legal requirements to find the existence of a criminal street gang cannot be deemed harmless.  Lodgment 6 at 8-18. The California Supreme Court summarily denied the petition without comment or citation to authority on October 30, 2013. Lodgment 7.  On September 18, 2014, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court alleging ineffective assistance of appellate counsel for failing to join Petitioner's co-appellant's claim that the trial court erroneously denied a motion to bifurcate the gang enhancement allegations.  Lodgment 8.  On December 10, 2014, the California Supreme Court denied Petitioner's petition citing In re Clark, 3 Cal. 4th 750, 767-79 (1993).  Lodgment 9.

On February 10, 2015, Petitioner filed the instant petition asserting the following claims: (1) there was insufficient evidence to support his robbery conviction in count 1, (2) the trial court violated his due process rights when it failed to instruct on simple theft as the lesser included offense of robbery in count 1, (3) the trial court violated his constitutional rights when it erroneously omitted a portion of the required jury instruction relating to the gang enhancement.  See Pet.   Petitioner asserts a fourth claim challenging the failure to bifurcate the gang enhancement allegations from the substantive crimes, although the parameters and constitutional basis of the claim are unclear.[3]  See id.  In his Traverse, Petitioner raises a fifth

_____

[3]  The Petition contains a page asserting a fourth ground but it contains no argument and merely states "please refer to Exhibit 'D.'"  Pet. at 9.  Although there is a cover page for Exhibit D, it does not contain any documents.  See id. at 53.  In his Traverse, Petitioner addresses each ground for relief in a numbered heading.  Trav.  The fourth heading is titled "Petitioner's Ineffective Assistance of Counsel Claim is Colorable."  Id. at 24.  In this section, Petitioner argues that the trial court violated his due process rights because it failed to bifurcate the gang allegations from the substantive crimes and the admitted gang evidence unfairly prejudiced him.  Id. at 24-26.   Despite the heading, the argument does not mention

9

1  claim arguing that cumulative errors at his trial violated his constitutional rights to a fair trial

2  and due process.  See Trav. at 26-28.

3  **<u>SCOPE OF REVEIW</u>**

4   Title 28 of the United States Code, section 2254(a), sets forth the following scope of

5  review for federal habeas corpus claims:

6    The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
     entertain an application for a writ of habeas corpus on behalf of a person in
7    custody pursuant to the judgment of a State court only on the ground that he is
     in custody in violation of the Constitution or laws or treaties of the United States.

8

9  28 U.S.C. § 2254(a).

10   The Petition was filed after enactment of the Anti-terrorism and Effective Death Penalty

11  Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214.  Under 28 U.S.C § 2254(d), as

12  amended by AEDPA:

13    (d) An application for a writ of habeas corpus on behalf of a person in
     custody pursuant to the judgment of a State court shall not be granted with
14    respect to any claim that was adjudicated on the merits in State court
     proceedings unless the adjudication of the claim—

15    (1) resulted in a decision that was contrary to, or involved an
16    unreasonable application of, clearly established Federal law, as determined by
     the Supreme Court of the United States; or

17  _____

18  ineffective assistance of counsel.  Id.  Respondent interpreted the fourth claim as asserting an
   ineffective assistance of counsel claim and addresses the claim with regards to both trial and
19  appellate counsel.  Ans. at 21-22.  Respondent notes that Petitioner presented the ineffective
   assistance of appellant counsel claim to the California Supreme Court in a habeas petition.
20  See id.; see also Pet. at 79, 82.  Because district courts must "construe pro se filings liberally,"
   see Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005), the Court construes Petitioner's
21  claims in Ground Four as alleging: the trial court violated Petitioner's due process rights when
   it refused to bifurcate the gang enhancement allegations from the substantive crimes,
22  ineffective assistance of trial counsel for failing to argue for bifurcation of the gang allegations,
   and ineffective assistance of appellate counsel for failing to join Petitioner's co-appellant's
23  claim that the trial court erroneously denied a motion to bifurcate the gang allegations.

1
2

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3   28 U.S.C. § 2254(d).   In making this determination, a court may consider a lower court's

4   analysis. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04 (1991) (authorizing a reviewing court to

5   look through to the last reasoned state court decision).   Summary denials are presumed to

6   constitute adjudications on the merits unless "there is reason to think some other explanation

7   for the state court's decision is more likely."   <u>Harrington v. Richter</u>, 562 U.S. 86, 99-100

8   (2011).

9   A state court's decision is "contrary to" clearly established federal law if the state court:

10   (1) "applies a rule that contradicts the governing law set forth in [Supreme Court] cases"; or

11   (2) "confronts a set of facts that are materially indistinguishable from a decision of [the

12   Supreme] Court and nevertheless arrives at a result different from [Supreme Court]

13   precedent." <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000).

14   A state court's decision is an "unreasonable application" of clearly established federal

15   law where the state court "'identifies the correct governing legal principle from [the Supreme]

16   Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"

17   <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003) (quoting <u>Williams</u>, 529 U.S. at 413).   "[A] federal

18   habeas court may not issue [a] writ simply because that court concludes in its independent

19   judgment that the relevant state-court decision applied clearly established federal law

20   erroneously or incorrectly.   Rather, that application must be objectively unreasonable." <u>Id.</u> at

21   75-76 (citations and internal quotation marks omitted).   Clearly established federal law "refers

22   to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of

23   the relevant state-court decision." <u>Williams</u>, 529 U.S. at 412.

1    If the state court provided no explanation of its reasoning, "a habeas court must

2    determine what arguments or theories supported or . . . could have supported, the state

3    court's decision; and then it must ask whether it is possible fairminded jurists could disagree

4    that those arguments or theories are inconsistent with the holding in a prior decision of [the

5    Supreme Court]." Harrington, 562 U.S. at 102.  In other words, a federal court may not grant

6    habeas relief if any fairminded jurist could find the state court's ruling consistent with relevant

7    Supreme Court precedent.

8    Finally, habeas relief also is available if the state court's adjudication of a claim "resulted

9    in a decision that was based on an unreasonable determination of the facts in light of the

10    evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); Wood v. Allen,

11    558 U.S. 290, 293 (2010).  A state court's decision will not be overturned on factual grounds

12    unless this Court finds that the state court's factual determinations were objectively

13    unreasonable in light of the evidence presented in state court. See Miller–El, 537 U.S. at 340;

14    see also Rice v. Collins, 546 U.S. 333, 341-42 (2006) (the fact that "[r]easonable minds

15    reviewing the record might disagree" does not render a decision objectively unreasonable).

16    This Court will presume that the state court's factual findings are correct, and Petitioner may

17    overcome that presumption only by clear and convincing evidence.   See 28 U.S.C.

18    § 2254(e)(1); Schriro v. Landrigan, 550 U.S. 465, 473-74 (2007).

19                                      **DISCUSSION**

20    **A.      Ground One: Insufficient Evidence to Support Robbery Conviction**

21    Petitioner alleges that his Fourteenth Amendment due process rights were violated

22    because insufficient evidence existed to support the count 1 verdict finding that Petitioner

23

committed robbery.[4]  See Pet. at 7, 20-35; see also Trav. at 10.  Petitioner argues that the factual record in this case establishes that (1) no taking occurred, (2) there was no force or fear directly used to accomplish a taking to the extent that one did occur, and (3) Petitioner did not have the requisite intent to steal.  See Pet. at 27-35.  Petitioner contends that his destruction of the Hennessy bottles during a fight does not constitute robbery, and that to hold so was an improper expansion of the crime.  Id. at 20, 23.

Respondent counters that there was sufficient evidence in the record to support the finding that a taking occurred, that force and fear was used to accomplish the taking, and that Petitioner acted with the requisite intent to permanently deprive the store of its property when he destroyed the Hennessy.  Ans. at 15.  Respondent thus contends that the state appellate court's rejection of Petitioner's claim of insufficiency of the evidence was reasonable and habeas relief should be denied.  See id.

Because the California Supreme Court summarily denied Petitioner's petition (Lodgment 7), the Court must "look through" the silent denial to the California Court of Appeal's opinion (Lodgment 5).  Ylst v. Nunnemaker, 501 U.S. 797, 804 n.3 (1991).  The California Court of Appeal found that substantial evidence supported Petitioner's robbery conviction.  See Lodgment 5 at 32-33.  In denying Petitioner's appeal, the California Court of Appeal stated:

---

[4]  In his Petition to this Court, Petitioner attached as exhibits photocopied pages entitled "Arguments Points and Authorities," which appear to be taken from his petition for review filed in the California Court of Appeal, and references the exhibits to substantiate his claims.  See Pet. at 6-9, 20-52.  Because it appears that Petitioner wishes to incorporate the arguments from his state appellate court's petition into the instant Petition, and in light of the Ninth Circuit's instruction that district courts must "construe pro se filings liberally," see Allen, 408 F.3d at 1153, this Court looks to the attached exhibits for further elaboration of Petitioner's claims.

Here, viewing the evidence in the light most favorable to the judgment (see *People v. Bloyd* (1987) 43 Cal.3d 333, 346-347), we conclude there is sufficient evidence in the record to support the finding that Austin intended permanently to deprive the store of its property (i.e., the Hennessy).   Even before the fight, the record shows that Austin and others from his group were demanding that they be given some of the Hennessy being loaded onto the truck by store employees.   The record also shows that as store employees continued to load the Hennessy cases, Austin became more insistent, demanded to know what they were doing with the Hennessy, said "this is Skyline" and threatened to follow the truck loaded with the Hennessy.

The record also shows that Austin next got back into the black car he had driven to the store and moved it so that the loaded truck was now prevented from leaving the parking lot.   After that, Austin exited his car and said, "Now you're blocked in.   You're not going to go anywhere."   Austin then walked around his car and said, "This is our area.   You guys are not going anywhere.   We're going to take your shit."   In addition, during this confrontation, Austin threw gang signs and told the concerned store employees, "this is Piru territory" and "this is Skyline."

This evidence, which we conclude is substantial, supports the finding that Austin acted with the requisite intent to permanently deprive the store of its property once the fight began between the Skyline gang members and others associated with the gang, on the one hand, and the store employees on the other, when Austin pulled out a five-inch knife and attacked Karlos and then went to the truck that was being guarded by Karlos, picked up at least three cases of Hennessy and threw the cases onto the asphalt pavement; he also threw at least one bottle of Hennessy.

Although Austin does not dispute other elements of his robbery conviction, we note this same evidence also supports the taking finding (see *People v. Hill* (1998) 17 Cal.4th 800, 852 [noting that the "'taking element of robbery has two necessary elements, gaining possession of the victim's property and asporting or carrying away the loot'" and noting that to "satisfy the asportation requirement for robbery . . . 'it is not necessary that the property be taken out of the physical presence of the victim'" and that "slight movement" is sufficient to satisfy the asportation requirement]) and the finding that the taking occurred by means of "force of fear" (see § 211; see also *People v. Wright* (1996) 52 Cal.App.4th 203, 210 [noting that the "force" required for robbery must be at least "a quantum more than that which is needed merely to take the property . . . of the victim"]; *Miller v. Superior Court* (2004) 115 Cal.App.4th 216, 222 [noting that the force or fear element of robbery is satisfied when the defendant uses force or fear (i) to acquire initially the victim's property and/or (ii) to retain, escape with or destroy it]).

Id. at 32-34.

The clearly established federal law regarding sufficiency of the evidence claims in the criminal context is set forth in Jackson v. Virginia, 443 U.S. 307 (1979). Jackson claims face a high bar in federal habeas proceedings. Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012). In Jackson, the Court held that the Fourteenth Amendment's Due Process Clause is violated, and an applicant is entitled to habeas corpus relief, "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. In making this determination, habeas courts must respect "the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict." Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). "[C]ircumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction." United States v. Cordova Barajas, 360 F.3d 1037, 1041 (9th Cir. 2004) (quoting United States v. Reyes–Alvarado, 963 F.2d 1184, 1188 (9th Cir. 1992)). "Although it might have been possible to draw a different inference from the evidence, [a federal habeas court is] required to resolve that conflict in favor of the prosecution." Ngo v. Giurbino, 651 F.3d 1112, 1115 (9th Cir. 2011); see also Coleman, 132 S.Ct. at 2062 (stating that "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'") (quoting Cavazos v. Smith, 132 S.Ct. 2, 4 (2011) (per curiam)); Jackson, 443 U.S. at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the

15cv309-BAS (BLM)

record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").   Federal habeas courts also must analyze <u>Jackson</u> claims "with explicit reference to the substantive elements of the criminal offense as defined by state law." <u>Chein v. Shumsky</u>, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) (quoting <u>Jackson</u>, 443 U.S. at 324 n.16).   When assessing the evidence presented at trial, a reviewing court must conduct a thorough review of the state court record.   <u>See</u> <u>Jones v. Wood</u>, 114 F.3d 1002, 1013 (9th Cir. 1997).

The Ninth Circuit has made clear that "[a]n additional layer of deference is added to this standard by 28 U.S.C. § 2254(d), which obliges [Petitioner] to demonstrate that the state court's adjudication entailed an unreasonable application of the quoted *Jackson* standard." <u>Briceno v. Scribner</u>, 555 F.3d 1069, 1078 (9th Cir. 2009) (citing <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005)).   In <u>Juan H.</u>, the Ninth Circuit first reviewed the standard of review applied by the state appellate court to a sufficiency of the evidence claim, and found that although the state court did not cite to the relevant federal case law, "such a citation is not required 'so long as neither the reasoning nor the result of the state-court decision contradicts' Supreme Court precedent." <u>Id.</u> at 1275 n.12 (quoting <u>Early v. Packer</u>, 537 U.S. 3, 8 (2003) (per curiam)).   Accordingly, it falls to this Court to determine whether the state appellate court opinion "reflected an unreasonable application of *Jackson* . . . to the facts of this case." <u>Juan H.</u>, 408 F.3d at 1275 (internal quotation omitted).

In this case, Petitioner was convicted of one count of robbery in violation of Cal. Penal Code § 211.   Lodgment 1 at 413; <u>see also</u> <u>id.</u> at 4265.   The trial court instructed the jury on the elements of the crime as follows: (1) "[t]he defendant took property that was not his own"; (2) "[t]he property was taken from another person's possession and immediate

1  presence"; (3) "[t]he property was taken against that person's will"; (4) "[t]he defendant used

2  force or fear to take the property or to prevent the person from resisting"; and (5) "[w]hen

3  the defendant used force or fear to take the property, he intended to deprive the owner of it

4  permanently."  Id. at 104, 4005-06; see also CALCRIM No. 1600.  Petitioner challenges the

5  sufficiency of the evidence and argues that "there was no intent to steal, no taking, and no

6  force or fear directly used to accomplish the taking to the extent one occurred."  See Pet. at

7  23, 27-35.  After a review of the state court record, this Court finds that there was substantial

8  evidence supporting the jury's determination that each of the above elements was established.

9        **1.  Taking Finding**

10        Petitioner contends that there was insufficient evidence to support the finding that a

11  taking occurred.  See Pet. at 30-32; Trav. at 15.  Petitioner concedes to handling and

12  damaging the Hennessy bottles, but argues that no taking occurred because "all of the actions

13  involved the moving of the Hennessy toward the store employees rather than away from

14  them."  Pet. at 30; see also Trav. at 14.

15        Pursuant to California law, "[t]he taking element of the robbery has two necessary

16  elements, gaining possession of the victim's property and asporting or carrying away the loot."

17  Velderrain v. Busby, 2015 WL 2188734, at *7 (C.D. Cal. Mar. 10, 2015) (quoting People v. Hill,

18  17 Cal. 4th 800, 852 (1998) (internal quotation marks omitted)), adopted, 2015 WL 2193750,

19  at *1 (C.D. Cal. May 7, 2015).  In order to "satisfy the asportation requirement for robbery, no

20  great movement is required, and it is not necessary that the property be taken out of the

21  physical presence of the victim.  Slight movement is enough to satisfy the asportation

22  requirement."  See id.

23

1    During the trial, Heveen Toma, a Moonlite Liquor store employee, testified that he saw

2  Petitioner grab three cases of Hennessy from the truck, throw the cases to the ground, and

3  throw at least one bottle of Hennessy "at someone."  See Lodgment 1 at 2098, 2186-88,

4  2194-95, 2730.  Mukhles Daud, another Moonlite Liquor store employee, also testified that he

5  saw Petitioner take one case of Hennessy out of the truck, open it, and throw bottles.  Id. at

6  2704-05, 2730-31.  As such, the store employees' testimony provides substantial evidence

7  supporting the "taking" element because Petitioner gained possession of several boxes of

8  Hennessey by taking them from the employees' possession, moving them from the truck to

9  the parking lot, and then breaking or throwing at least one bottle.  See Velderrain, 2015 WL

10  2188734, at *8 (finding that "[t]estimony concerning petitioner's access to the [property at

11  issue] and the displacement of the [property] support a finding of asportation by petitioner.").

12  Accordingly, the trial record contains substantial evidence supporting the jury's finding that a

13  taking by Petitioner occurred.

14    **2.  Taking Occurred by Force or Fear**

15    Petitioner contends that even if a taking occurred, there was insufficient evidence to

16  conclude that it occurred by force or fear.  See Pet. at 32-25; Trav. at 14.  In support,

17  Petitioner asserts that "for a robbery to have occurred in this case, force or fear must have

18  been used to complete the taking of the Hennessy."  Pet. at 32.  Petitioner argues that the

19  incident at issue was a "parking lot brawl caused by [his] and his co-participant's actions on

20  that night and Karlos' aggression to them," and that the altercation "had nothing to do with

21  the Hennessy."  Id. at 34.  Respondent quotes the reasoning of the California Court of Appeal

22  addressing the claim and asserts that the taking "occurred by means of 'force or fear.'"  Ans.

23  at 15 (quoting Lodgment 5 at 33-34).

1    This Court's review of the trial record establishes that there was sufficient evidence to

2    support the jury's finding that the taking occurred by means of force or fear.   The record

3    shows that before the fight, Petitioner engaged in acts that placed the store employees in fear

4    that Petitioner and his cohorts would rob them.   Heveen Toma testified that Petitioner and

5    another individual repeatedly demanded to know where the store employees were taking the

6    Hennessy and stated that they wanted some of the Hennessy.   See Lodgment 1 at 2097-98,

7    2154-55.   Both Heveen Toma and Salwan Toma testified that Petitioner threatened to follow

8    the truck loaded with the Hennessy.   See id. at 2155-56, 2249, 2299, 2468.   Heveen Toma

9    also testified that Petitioner moved his car to block the truck loaded with Hennessy and said,

10   "I'm going to follow you.   You guys are blocked in.   You're not going to go anywhere.   I'm

11   going to take all that."   Id. at 2299; see also id. at 2165.   Additionally, Heveen Toma testified

12   that Petitioner threw a plastic bottle and said, "This is our area.   You guys are not going

13   anywhere.   We're going to take your shit."   Id. at 2168-69.

14       Petitioner also announced his affiliation with the Skyline Piru criminal street gang.

15   Heveen Toma testified that Petitioner threw up gang signs and said, "This is Skyline," "This is

16   our area," and "This is Piru territory."   See id. at 2156, 2160-61, 2165, 2299, 2469.   Gang

17   Expert Jon Brown testified that Petitioner was a documented Eastside Skyline Piru gang

18   member and that gang signs are meant to intimidate or create fear.   See id. at 3347, 3414-23,

19   3440-64, 3469, 3471, 3494-96.

20       A reasonable trier of fact can conclude from this evidence that Petitioner used force or

21   fear to take the Hennessy.   To further support this contention, both Heveen Toma and Salwan

22   Toma testified that they were afraid that they were going to be robbed based on Petitioner's

23   actions.   See id. at 2155-56, 2173, 2300, 2475.   Furthermore, the evidence presented at trial

1   showed that Petitioner used the threat of physical violence to instill fear in the store

2   employees.   Heveen Toma testified, and the video surveillance footage admitted at trial

3   shows, that Petitioner hit Karlos Toma with his car.  See id. at 2173, 2262-63, 2357-58.

4   Moreover, Heveen Toma testified that Petitioner approached the truck full of Hennessy

5   wielding a knife.  See id. at 2183-86.

6         In sum, the state court record shows that Petitioner threatened the store employees,

7   demanded to know what they were doing with the cases of Hennessy, blocked the truck

8   loaded with the Hennessy from leaving, hit one of the employees with a car, and uttered his

9   gang name and threw up gang signs.  As such, there was overwhelming evidence to support

10  the jury's conclusion that Petitioner used force and instilled fear in the store employees to

11  accomplish the taking of the Hennessy.

12                      **3.  Intent to Permanently Deprive**

13        Petitioner contends that there was not sufficient evidence to support the finding that he

14  acted with the requisite intent to permanently deprive the store of its property, the Hennessy,

15  because he only intended to use the Hennessy as a weapon during the fight, not to steal it.

16  See Pet. at 21, 27-30; Trav. at 14-15.  Petitioner further challenges Respondent's argument

17  and the state court's finding that intent to destroy property is sufficient to satisfy the requisite

18  intent to steal, required for a robbery conviction.  See id.

19        Pursuant to California law, a taking for the purposes of robbery occurs "even if the

20  defendant's sole intent is to destroy the property."  People v. Green, 27 Cal. 3d 1, 58 (1980),

21  overruled on another ground in People v. Martinez, 20 Cal. 4th 225, 234-39 (1999); see also

22  People v. Davis, 19 Cal. 4th 301, 309 (1998) (an intent to permanently deprive can arise when

23  the defendant asserts control over the property in a manner that creates a "substantial risk of

1   permanent loss"); <u>People v. Mumm</u>, 98 Cal. App. 4th 812, 819 (2002) (same).  This Court's

2   review of the trial record establishes that there was substantial evidence to support the jury's

3   determination that Petitioner had the requisite intent.

4        The record shows that before the fight Petitioner and others from his group were

5   focused on the Hennessy that the store employees were loading onto the truck and repeatedly

6   expressed an intent to take the Hennessey.  Store employees Heveen Toma and Mukhles

7   Daud testified that Petitioner smacked the cases of Hennessy and loudly stated, "Oh, this is

8   mine" and "Give me that."  <u>See</u> Lodgment 1 at 2149, 2718-19.  The video surveillance footage,

9   which was shown to the jury, shows Petitioner slapping the cases of Hennessy.  <u>See id.</u> at

10  2278.  Heveen Toma further testified that as the store employees continued to load the

11  Hennessy cases onto the truck, Petitioner continued to talk to the employees, demanded to

12  know where they were taking the Hennessy, and threatened to follow the truck loaded with

13  the Hennessy.  <u>See id.</u> at 2154-56, 2468.  Salwan Toma also testified that Petitioner and his

14  cohorts repeatedly stated they wanted some of the Hennessy and threatened "[i]f you guys

15  leave, we're going to follow you."  <u>See id.</u> at 2464, 2468.

16       The record shows that Petitioner got back into the car he had driven to the store and

17  moved it so that the truck loaded with the Hennessy was blocked from leaving the parking lot.

18  <u>See id.</u> at 2467.  Heveen Toma testified that Petitioner exited his car and said, "Now you're

19  blocked in.  You're not going to go anywhere."  <u>Id.</u> at 2165, 2299.  Heveen Toma further

20  testified that Petitioner then walked around his car and said, "This is our area.  You guys are

21  not going anywhere.  We're going to take your shit."  <u>Id.</u> at 2168.

22       Further, both Mukhles Daud and Heveen Toma testified that Petitioner grabbed cases of

23  Hennessy from the truck and threw them to the ground.  <u>See id.</u> at 2186-88, 2730-31.  The

1   record also indicates that Petitioner threw at least one bottle of Hennessy.  Id. at 2194-95,

2   2730.  When Petitioner threw the cases of Hennessy to the ground and the bottle of Hennessy

3   at someone, he destroyed some of the store's Hennessy, thereby permanently depriving the

4   store of its property.

5       Petitioner asserts that he only intended to use the Hennessey as a weapon during the

6   fight and that he did not intent to steal it.  See Pet. at 21, 27-30; Trav. at 14-15.  However, as

7   set forth above, there was ample evidence to support the jury's conclusion that Petitioner

8   intended to permanently deprive the store of its property.  The Court must respect "the

9   province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and

10  draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts

11  in a manner that supports the verdict."  Walters, 45 F.3d at 1358.  In sum, this Court

12  concludes that the trial record contains sufficient evidence to support the jury's finding that by

13  threatening to forcibly take the Hennessey from the store employees and then throwing the

14  cases of Hennessy to the ground and throwing at least one bottle of Hennessy, Petitioner

15  intended to permanently deprive the store of its property, the Hennessy.  See Davis, 19 Cal.

16  4th at 309 (an intent to permanently deprive can arise when the defendant asserts control

17  over the property in a manner that creates a "substantial risk of permanent loss"); Mumm, 98

18  Cal. App. 4th at 819 (2002) (same).

19      Viewing the evidence in the light most favorable to the prosecution, the Court finds that

20  there was sufficient evidence from which the jury reasonably could have concluded that

21  Petitioner committed a robbery, as charged in count 1.  See Jackson, 443 U.S. at 319 ("[T]he

22  relevant question is whether, after viewing the evidence in the light most favorable to the

23  prosecution, any rational trier of fact could have found the essential elements of the crime

1    beyond a reasonable doubt.").  As a result, the state court's decision was not contrary to, and

2    did not involve an unreasonable application of, clearly established federal law.  See 28 U.S.C.

3    § 2254(d).  Accordingly, the Court **RECOMMENDS** that Petitioner's sufficiency of the evidence

4    claim be **DENIED**.

5    **B.    Ground Two: The Trial Court's Alleged Failure to Instruct on Lesser**

6    **Included Offense**

7    In Ground Two, Petitioner asserts that the trial court violated his right to due process

8    and fair trial by failing to instruct the jury on the lesser included offense of theft.  See Pet. at

9    7, 37-42; Trav. at 16-21.  In support, Petitioner alleges that one of the key evidentiary

10   questions during his trial was whether he "moved and damaged the Hennessy by use of force

11   or fear," and argues that if the lesser included offense instruction was given, the jury could

12   have concluded that a theft, as opposed to robbery, occurred.  See Pet. at 37-38, 41-42; Trav.

13   at 20-21.  Petitioner explains that general force and fear of fight are not sufficient to support a

14   robbery conviction, and that the "acts constituting the theft of the property must be directly

15   accomplished through specific force and fear."  Pet. at 41-42.  Petitioner appears to allege that

16   no specific force or fear was involved in the destruction of property because he and the store

17   employees merely used the Hennessy bottles as tools during the fight and the conduct was

18   devoid of any other intent.  See id.; see also Lodgment 6 at 8.  Petitioner further argues that

19   the trial court's failure to give the lesser included offense instruction was not harmless, and

20   that the error prevented him from presenting a complete defense.  See Trav. at 20.

21   Respondent argues that the trial court's alleged failure to instruct is not a federal claim,

22   and thus should be denied.  Ans. at 15-16.  To the extent federal due process requires a trial

23   court to give a lesser offense instruction, Respondent submits that such instruction is required

only when the evidence warrants it.  Id. at 16-17.  Respondent further maintains that because

there was no evidence in this case to suggest that Petitioner committed theft, and not

robbery, Petitioner's right to present a complete defense was not "unquestionably violated,"

and that any alleged error did not have a substantial and injurious effect on the verdict.  Id. at

16.  Respondent thus asserts that Petitioner is not entitled to habeas relief on this claim.  See

id. at 15-17.

The California Court of Appeal rejected this claim and stated the following:

> [W]e conclude on this record that no reasonable jury could find that Austin committed a simple theft rather than a robbery because the evidence in the record overwhelmingly shows that Austin used force and/or fear when he mentioned his gang affiliation, threw up gang signs at the same time he demanded the employees of the store turn over the Hennessy, and wielded a five-inch knife immediately before he threw the cases of Hennessy onto the pavement.

> However, even assuming the trial court erred in failing sua sponte to instruct the jury that it was entitled to find theft as a lesser included offense of robbery, we conclude that error was harmless.

> . . .

> Here, any evidence that Austin committed a mere theft (i.e., did not use force or fear in the taking of the Hennessy) was relatively weak when compared to the substantial and significant evidence (summarized *ante*) in the record supporting the finding that Austin took (i.e., destroyed) the Hennessy by use of force and/or with fear.  Our conclusion the error was harmless is buttressed, moreover, by the fact the jury found that Austin committed four counts of assault by means likely to produce great bodily injury and assault with a deadly weapon and by means of force likely to produce great bodily injury, which findings strongly suggest that the jury believed force was utilized in the taking of the property.

Lodgment 5 at 35-36.

To the extent that Petitioner alleges that the state trial court violated state law when it

did not instruct the jury on the lesser included offense of theft, the claim is not subject to

federal habeas review.  Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000) (citation omitted)

("the failure of a state court to instruct on a lesser offense [in a non-capital case] fails to

present a federal constitutional question and will not be considered in a federal habeas corpus

1    proceeding.").  Only claims alleging a violation of "the Constitution or laws or treaties of the

2    United States" are cognizable on federal habeas review.  See 28 U.S.C. § 2254(a); Estelle v.

3    McGuire, 502 U.S. 62, 67-68 (1991) (stating that "it is not the province of a federal habeas

4    court to reexamine state-court determinations on state-law questions."); Matylinsky v. Budge,

5    577 F.3d 1083, 1094 n.4 (9th Cir. 2009) (same).

6        To the extent Petitioner alleges that the omission violated his federal constitutional

7    rights, this Court will consider the claim.  See 28 U.S.C. § 2254(d).  There is, however, no

8    clearly established federal law on this issue because the United States Supreme Court

9    expressly declined to rule on whether a trial court's failure to instruct on a lesser included

10   offense in a non-capital case violates the federal constitution.  See Beck v. Alabama, 447 U.S.

11   625, 638 n.14 (1980); see also Powell v. Hatcher, 407 Fed.App'x 226, 227 (9th Cir. 2011)

12   (denying habeas relief and noting that in Beck, the Supreme Court expressly declined to rule

13   on the issue); United States v. Rivera–Alonzo, 584 F.3d 829, 834 n.3 (9th Cir. 2009) ("In the

14   context of a habeas corpus review of a state court conviction, we have stated that there is no

15   clearly established federal constitutional right to lesser included instructions in non-capital

16   cases.") (citation omitted).  Therefore, under the standard of review set forth in 28 U.S.C.

17   § 2254(d), habeas relief is unavailable on this claim as this Court cannot find that the state

18   appellate court "unreasonabl[y] appli[ed] clearly established Federal law, as determined by the

19   Supreme Court of the United States."  See 28 U.S.C. § 2254(d).

20       Additionally, while "the defendant's right to adequate jury instructions on his or her

21   theory of the case might, in some cases, constitute an exception to the [foregoing] general

22   rule," that is not the situation here.  See Solis, 219 F.3d at 929; see also Clark v. Brown, 450

23   F.3d 898, 904 (9th Cir. 2006) (state court's jury instructions violate due process if they deny

the criminal defendant "a meaningful opportunity to present a complete defense") (quoting

California v. Trombetta, 467 U.S. 479, 485 (1984)).   The Due Process Clause entitles a

defendant to "an instruction as to any recognized defense for which there exists evidence

sufficient for a reasonable jury to find in his favor."  See Hagenno v. Yarborough, 253 F.App'x

702, 704 (9th Cir. 2007) (quoting Mathews v. United States, 485 U.S. 58, 63 (1988)); see also

Bradley v. Duncan, 315 F.3d 1091, 1098-99 (9th Cir. 2002).  However, failure to instruct on a

defense theory amounts to an error only if "the theory is legally sound and the evidence in the

case makes [the theory] applicable."  Clark, 450 F.3d at 904-05.

Pursuant to California law, "theft is a lesser included offense of robbery, the difference

being that robbery includes the added element of force or fear."  See Madril v. Harrington,

2013 WL 1089751, at *9 (N.D. Cal. Mar. 15, 2013) (citing People v. Burns, 172 Cal. App. 4th

1251, 1259 (2009)), aff'd, 581 F. App'x 661 (9th Cir. 2014); see also Cal. Penal Code § 211.

Petitioner argues that he merely used the Hennessy bottles as a tool during the fight, and that

there was no specific force or fear involved in the destruction of property.  See Pet. at 41-42;

see also Trav. at 14-15.  However, as discussed in detail above, the evidence presented at

Petitioner's trial established that Petitioner threatened the store employees, demanded to

know what they were doing with the cases of Hennessy, blocked the truck containing the

Hennessy from leaving, demanded the Hennessy be given to him, hit one of the employees

with a car, uttered his gang name and threw up gang signs, and wielded a knife immediately

before throwing the cases of Hennessy onto the parking lot.  As such, there was overwhelming

evidence that the Hennessy was taken by force and fear, and a rational jury would not have

been able to convict Petitioner of theft and acquit him of robbery.  Accordingly, the trial court

did not err when it did not give the lesser included offense instruction on theft.  See Madril,

2013 WL 1089751, at *9 (finding that a rational jury would not have been able to convict petitioner of theft and acquit him of robbery, and that there was no trial court error in refusing to give a lesser included offense instruction, where substantial evidence at trial established that the items at issue were taken by force and fear).

Further, Petitioner has not provided anything other than mere speculation that the alleged failure to instruct on the lesser offense of theft impacted in any way the jury's decision to convict him of robbery charged in count 1.  As correctly pointed out by the state appellate court, even if the trial court committed an instructional error, the error was harmless in light of the jury finding that Petitioner committed four counts of assault by means likely to produce great bodily injury and assault with a deadly weapon and by means of force likely to produce great bodily injury, which demonstrated the jury's belief that force was utilized in the taking of the property.  See Lodgments 1 at 413-17; 5 at 36; see also Clark, 450 F.3d at 904-05 (failure to instruct on a defense theory amounts to an error only if "the theory is legally sound and the evidence in the case makes [the theory] applicable.").

Because there is no U.S. Supreme Court law requiring a trial judge to instruct on a lesser included crime in a non-capital case like this one, and because there was little, if any, evidence to support the lesser included offense instruction, the state court's rejection of Petitioner's claim of instructional error was not contrary to, nor an objectively unreasonable application of, any clearly established federal law, nor an unreasonable determination of the facts in light of the evidence presented.  Accordingly, this Court **RECOMMENDS** that Petitioner's Second Ground for relief be **DENIED**.

///

///

**C.** **Ground Three: Omission of the Portion of CALCRIM No. 1401 Defining the Term "Pattern of Criminal Gang Activity"**

Petitioner contends that his constitutional rights were violated because the trial court erroneously omitted the required portion of CALCRIM No. 1401 defining the term "pattern of criminal gang activity," and that the error was not harmless beyond a reasonable doubt, thereby justifying the reversal of the gang enhancements.  See Pet. at 8, 44-52; Trav. at 22-24.  In support, Petitioner argues that the omitted portion of the jury instruction was "detailed, legally complex, and not otherwise covered by other portions of the instructions," and that as a result of the omission, the jury did not find the existence of a criminal street gang, as defined in Cal. Penal Code § 186.22.  See Pet. at 50; Trav. at 23.  Petitioner further states that the prosecution is required to prove beyond a reasonable doubt every element of the charged offense, and appears to argue that the trial court's jury instruction relieved the prosecution of this burden, thereby violating his Sixth Amendment right to trial by jury and his due process rights.  See Trav. at 24.

Respondent submits that the state court reasonably determined that Petitioner's constitutional rights were not violated by the omission of a portion of the gang-enhancement instruction.  Ans. at 17.  Respondent acknowledges that the trial court did not define the term "pattern of criminal gang activity," but argues that "in light of the evidence and the instruction as a whole," the omission did not render Petitioner's trial fundamentally unfair.  See id. at 17-20.  Respondent thus asserts that Petitioner is not entitled to federal habeas relief on this claim.  Id. at 21.

Petitioner presented his instructional error claim to the California Supreme Court in a petition for review, which was summarily denied without a statement or reasoning or citation

1    of authority.  Lodgments 6 at 14-18; 7.  Petitioner presented this claim to the California Court

2    of Appeal.  See Lodgments 3 at 34-43; 5 at 36-47.  The state appellate court denied the claim

3    in a reasoned opinion.  Lodgment 5 at 35-47.  The Court will therefore look through the silent

4    denial by the state supreme court to the appellate court's opinion.  Ylst, 501 U.S. at 804 n.3.

5         After reviewing the modified CALCRIM No. 1401 jury instruction given at Petitioner's trial

6    and the omitted portion of the instruction defining a "pattern of criminal gang activity," the

7    California Court of Appeal reasoned as follows:

8              The record shows that the parties specifically discussed the predicate acts
         that would be admitted to show a "pattern of criminal gang activity," with the
9         defense arguing only two such predicate acts should be admissible and the
         People arguing that they should be allowed to introduce evidence of three such
10        acts.  The court agreed with the People in ruling as follows:

11             "Penal Code [section] 186.22, subdivision parentheses small (f) defines a
         criminal street gang as an 'ongoing organization, association or group of three or
12        more persons, whether formal or informal, having as one of its primary activities
         the commission'—and the language used is 'of one or more of the criminal acts
13        enumerated in paragraphs 1 to 33, inclusive of Penal Code [section] 186.22
         subdivision (e),' and then there's some additional language.

14             . . .

15             I don't see a basis for excluding the People's evidence of three predicate acts
         based on their representation, the offer of proof made by the People."
16

17   Lodgment 5 at 36-40.  The appellate court further examined the evidence presented by the

18   prosecution to establish the predicate acts and the Skyline gang members' alleged pattern of

19   criminal activity as follows:

20             [T]he People proffered the testimony of their gang expert, Detective
         Brown.  He testified the primary activities of the Skyline gang included "murders,
21        shootings, robberies, drug deals, stolen cars, burglaries, financial crimes such as
         counterfeiting [and] fake I.D.'s[.]"
22
             Detective Brown opined that Skyline gang members "either individually or
23        collectively [have] engaged in a pattern of criminal street gang activity."

Id. at 40.   The California Court of Appeal then reviewed Detective Brown's testimony pertaining to the January 12, 2009 incident, which resulted in the conviction of a Skyline gang member Jeovani Jackson; the June 9, 2007 incident, which led to the convictions of a Skyline gang member Charles Neal and an O'Farrell gang member Maurice Tucker; and the November 2009 incident, which involved another Skyline gang member, Adrian Cody.  Id. at 40-43.  The appellate court noted that the trial court admitted as exhibits certified copies of Jackson's criminal conviction based on his guilty plea of assault with a deadly weapon in violation of Cal. Penal Code § 245(a)(2), and admission of gang and weapons allegations; Neal's criminal conviction of October 2010 for the murder of Cleveland and stated that the record "show[ed] that Tucker also was convicted for that crime in August 2011"; and Cody's criminal conviction for aiding and abetting a robbery in violation of Cal. Penal Code § 211.  Id.

Further, the appellate court reviewed the prosecution's closing argument summarizing the above evidence and arguing that the Skyline gang committed a "pattern of criminal activity."  Id. at 43-44.  Additionally, the California Court of Appeal referenced Petitioner's counsel's and Petitioner's co-defendant's counsel's closing arguments:

> Austin's counsel in his closing did not address whether the Skyline gang engaged in a "pattern of criminal activity" for purposes of being a "criminal street gang." Price's counsel, however discussed the three predicate acts presented by the People, but he did so not with respect to the issue of "pattern of criminal gang activity" but rather with respect to whether the People had proved beyond a reasonable doubt that the Skyline gang engaged in sufficient "primary activities."

Id. at 43-45.  Based on the above analysis, the California Court of Appeal concluded that the trial court's error in failing to instruct on the term "pattern of criminal gang activity" to establish that the Skyline gang was a "criminal street gang" was harmless beyond a reasonable doubt.  Id. at 47.  The appellate court reasoned as follows:

30

1

2

3

4

     In looking at CALCRIM No. 1401, we note the jury was specifically instructed that it could not find a "pattern of criminal gang activity" "unless all of you agree that two or more crimes that satisfy these requirements were committed, but you do not have to all agree on which crimes were committed." Moreover, the jury was also told that the People have the burden to prove each allegation of the enhancement beyond a reasonable doubt and that if the People did not meet this burden, it was required to find the gang enhancement had not been proved.

5

6

7

8

     What is more, the record shows there were three predicate acts proffered by the People.  Neither Austin nor Price contend that any of the three predicate acts do *not* meet the criteria for establishing a "pattern of criminal gang activity" as provided in section 186.22, subdivision (e) and, in any event, our independent review of this issue confirms that the three predicate acts do in fact satisfy subdivision (e) of section 186.22.

9

10

11

12

13

     In light of the argument of the prosecutor during closing regarding the three specific predicate acts proffered by the People to prove a "pattern of criminal gang activity" and the finding of the jury that the People proved at least two such acts beyond a reasonable doubt (see § 186.22, subd. (e)), we conclude the trial court's error in failing to instruct on the meaning of "pattern of criminal gang activity" in then-applicable CALCRIM No. 1401 to establish the Skyline gang was a "criminal street gang" within the meaning of the law was harmless beyond a reasonable doubt.  (See *Chapman v. California, supra*, 386 U.S. at p. 24.)

14   Id. at 46-47 (footnote omitted).

15      Generally, challenges to jury instructions based solely on alleged errors of state law do

16 not state cognizable claims in federal habeas corpus proceedings.  See Estelle v. McGuire, 502

17 U.S. 62, 71-72 (1991); Swarthout v. Cooke, 562 U.S. 216, 219 (2011) (internal quotation

18 marks and citation omitted) ("federal habeas corpus relief does not lie for errors of state

19 law.").   To establish a federal constitutional claim based on missing or incorrect jury

20 instructions, petitioner bears an "especially heavy" burden and must show that the jury

21 instruction error "so infected the entire trial that the resulting conviction violated due process."

22 Clark, 450 F.3d at 904 (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973) and Hendricks v.

23 Vasquez, 974 F.2d 1099, 1106 (9th Cir. 1992)); see also Estelle v. McGuire, 502 U.S. 62, 72

1    (1991).  "This standard for instructional error applies to ambiguous or omitted instructions."

2    Murtishaw v. Woodford, 255 F.3d 926, 971 (9th Cir. 2001).  The instruction may not be judged

3    in artificial isolation; rather, it must be considered in the context of the instructions as a whole

4    and the entire trial record, including the arguments of counsel.  See Oquendo v. Jacquez, 2011

5    WL 3205351, at *6 (C.D. Cal. May 9, 2011) (citing Estelle, 502 U.S. at 72).  If the challenged

6    instruction is found to have violated a petitioner's constitutional right, a habeas petitioner is

7    not entitled to relief unless the error "had substantial and injurious effect or influence in

8    determining the jury's verdict."   See Brecht v. Abrahamson, 507 U.S. 619, 637 (1993);

9    Hedgpeth v. Pulido, 555 U.S. 57, 61-62 (2008).

10        "The Fourteenth Amendment right to due process and the Sixth Amendment right to

11   trial by jury, taken together, entitle a criminal defendant to a jury determination that he is

12   guilty of every element of the crime with which he is charged, beyond a reasonable doubt."

13   Apprendi v. New Jersey, 530 U.S. 466, 466 (2000) (citation omitted); see also United States v.

14   Gaudin, 515 U.S. 506, 510 (1995).  "A failure by the jury to find an element of a crime,

15   including a fact which enhances a sentence, is susceptible to harmless error analysis."

16   Jackson, 2015 WL 456547, at *6 (citing Washington v. Recuenco, 548 U.S. 212, 220 (2006);

17   Neder v. United States, 527 U.S. 1, 8-15 (1999)).

18        Petitioner was convicted of robbery in violation of Cal. Penal Code § 211 (count 1), two

19   counts of assault by means likely to produce great bodily injury in violation of Cal. Penal Code

20   § 245(a)(1) (counts 2 and 3), and two counts of assault with a deadly weapon and by means

21   of force likely to produce great bodily injury in violation of Cal. Penal Code § 245(a)(1)

22   (counts 4 and 5).  Lodgment 1 at 413-17.  The jury also found true the allegation pursuant to

23   Cal. Penal Code § 186.22(b)(1) that Petitioner committed the offenses charged in counts 1-5

for the benefit of a criminal street gang.  Id.  Petitioner argues that his gang enhancements must be reversed because the trial court committed an error by omitting the portion of CALCRIM No. 1401 that defines a "pattern of criminal gang activity," and that the error was not harmless beyond a reasonable doubt.  See Pet. at 44-45.  Petitioner appears to argue that the trial court's alleged error violated his Sixth Amendment right to trial by jury and the Fourteenth Amendment due process rights, by depriving him of a jury determination that he is guilty beyond a reasonable doubt of every element of the enhancement.  See Trav. at 24.

To obtain a gang enhancement under California law, the prosecution is required to prove that: (1) petitioner committed a felony "for the benefit of, at the direction of, or in association with any criminal street gang," and (2) petitioner committed the crime "with the specific intent to promote, further, or assist in any criminal conduct by gang members."  See Cal. Penal Code 186.22(b)(1); Emery v. Clark, 643 F.3d 1210, 1214 (9th Cir. 2011).   To establish the existence of a "criminal street gang," the prosecution must offer evidence that the gang is an ongoing association of at least three people with a common name or identifying sign or symbol, and that one of the group's primary activities is "the commission of one or more of the criminal acts enumerated in [Cal. Penal Code] § 186.22(e), and whose members, individually or collectively, have engaged in a pattern of criminal gang activity . . . ."  Martinez v. Biter, 2015 WL 3407930, at *8 (C.D. Cal. Apr. 6, 2015) (internal quotation marks omitted) (citing People v. Hernandez, 33 Cal. 4th 1040, 1047 (2004) and People v. Gardeley, 14 Cal. 4th 605, 616-17 (1996)); see also Cal. Penal Code §§ 186.22 (e) & (f).  The term "pattern of criminal gang activity" is defined as the "commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of

this chapter[5] and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons."  Cal. Penal Code § 186.22(e).

The trial court instructed the jury with a modified version of CALCRIM No. 1401 as follows:

> If you find the defendant guilty of the crimes charged in Counts One through Five, you must then decide whether, for each crime, the People have proved the additional allegation that the defendant committed that crime for the benefit of, at the direction of, or in association with a criminal street gang.  You must decide whether the People have proved this allegation for each crime and return a separate finding for each crime.
>
> To prove this allegation, the People must prove that:
>
> 1.  The defendant committed the crime for the benefit of, at the direction of, or in association with a criminal street gang;
>
> AND
>
> 2.  The defendant intended to assist, further, or promote criminal conduct by gang members.
>
> A *criminal street gang* is any ongoing organization, association, or group of three or more persons, whether formal or informal:
>
> 1.  That has a common name or common identifying sign or symbol;
>
> 2.  That has, as one or more of its primary activities, the commission of murder, attempted murder, assault, robbery, firearms, or firearms offenses;
>
> AND
>
> 3.  Whose members, whether acting alone or together engage in or have engaged in a pattern of criminal gang activity.

---

[5] The effective date of the California Street Terrorism Enforcement and Prevention Act at issue is September 26, 1988.  See <u>Martinez</u>, 2015 WL 3407930, at *8 n.2.

In order to qualify as a *primary activity*, the crime must be one of the group's chief or principal activities rather than an occasional act committed by one or more persons who happen to be members of the group.

The crimes, if any, that establish a pattern of criminal gang activity, need not be gang-related.

The People need not prove that the defendant is an active or current member of the alleged criminal street gang.

If you find the defendant guilty of a crime in this case, you may consider that crime in deciding whether one of the group's primary activities was commission of that crime and whether a pattern of criminal gang activity has been proved.

You may not find that there was a pattern of criminal gang activity unless all of you agree that two or more crimes that satisfy these requirements were committed, but you do not have to all agree on which crimes were committed.

The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met the burden, you must find that the allegation has not been proved.

Lodgment 1 at 112-13. The trial court's instruction omitted the following definition:

A *pattern of criminal gang activity*, as used here, means:

1. [The] (commission of[,] [or]/ attempted commission of[,][or]/conspiracy to commit[,] [or]/ solicitation to commit[,] [or]/ conviction of[,] [or]/ (Having/having) a juvenile petition sustained for commission of):

   *<Give 1A if the crime or crimes are in* Pen. Code, § 186.22(e)(1)–(25), (31)–(33).>

   1A. (any combination of two or more of the following crimes/[,][or] two or more occurrences of [one or more of the following crimes]:) _____ *<insert one or more crimes listed in* Pen. Code, § 186.22(e)(1)– (25), (31)–(33)[6]>

---

[6] The relevant portion of  Cal. Penal Code § 186.22(e) lists the following crimes:

(1) Assault with a deadly weapon or by means of force likely to produce great bodily injury, as defined in Section 245.

[OR]

      1B. [at least one of the following crimes:] _____ *<insert one or more crimes from* Pen. Code, § 186.22(e)(1)–(25), (31)–(33)*>*;

AND

[at least one of the following crimes:] _____ *<insert one or more crimes in* Pen. Code, § 186.22(e)(26)–(30)*>*;

2.  At least one of those crimes was committed after September 26, 1988;

3. The most recent crime occurred within three years of one of the earlier crimes;

AND

4. The crimes were committed on separate occasions or were personally committed by two or more persons.

See CALCRIM No. 1401; Pet. at 39-40.

Because the trial court's modified CALCRIM No. 1401 instruction omitted the definition of the term "pattern of criminal gang activity," this Court must examine whether the trial court's error "had substantial and injurious effect or influence in determining the jury's verdict." See Brecht, 507 U.S. at 637; Hedgpeth, 555 U.S. at 61-62.

During Petitioner's trial, the prosecution offered the testimony of their gang expert, Jon Brown, a detective in the gang unit of the San Diego Police Department.   Lodgment 1 at 3347.   Detective Brown testified that the "primary activities" of the Skyline gang included "murders, shootings, robberies, drug deals, stolen cars, burglaries, financial crimes such as

---

(2) Robbery, as defined in Chapter 4 (commencing with Section 211) of Title 8 of Part 1.
(3) Unlawful homicide or manslaughter, as defined in Chapter 1 (commencing with Section 187) of Title 8 of Part 1.

Cal. Penal Code § 186.22.

counterfeiting [and] fake I.D.'s," and the possession of weapons.  Id. at 3405.  Detective Brown further testified about three predicate crimes to establish the Skyline gang's "pattern of criminal street gang activity" as follows:

> Q:  Now, have Skyline gang members either individually or collectively engaged in a pattern of criminal street gang activity?
>
> A:  Yes, they have.
>
> Q:  Are you familiar with a man by the name of Jeovani Jackson?
>
> A:  I am.
>
> Q:  And how are you familiar with Mr. Jackson?
>
> A:  Jeovani Jackson was a Skyline gang member.
>
> I believe it was January of '09, Jorkim Rose, who was a rival Lincoln Park gang member, was walking down 54th and Imperial, he's confronted by four black males, one of the black males asks him "what's up?"  He doesn't immediately recognize him, but when he turned around, one of the black males tells him–Skyline Black males tells him "I'll smoke you right here."
>
> And he realized he knows that suspect, which turned out to be Jeovani Jackson, from doing jail time with him on three different stents.
>
> Jeovani Jackson shoots Jorkim four times: once through the neck, once in the chest, and I believe in the back and buttocks area.
>
> Seandell Jones, who was an O'Farrell Park gang member, was subsequently I.D.'d in that as one of the other black males.
>
> Seandel Jones and Jeovani Jackson were subsequently arrested and prosecuted for the case.

Id. at 3406-07.  The prosecution also introduced a certified copy of Jackson's May 8, 2009 criminal conviction based on his guilty plea of assault with a deadly weapon, pursuant to Cal. Penal Code § 245(a)(2), and an admission of gang and weapons allegations.  Id. at 3407-08; see also id. at 59-73.

15cv309-BAS (BLM)

1      Detective Brown then testified about Charles Neal, a documented Skyline gang

2    member, and Maurice Tucker, an O'Farrell gang member, and their involvement in an incident

3    that took place on June 9, 2007:

4         Q:  What about [Mr. Neal's] behavior on June 9th, 2007 formed your opinion
          that he has committed a predicate crime?
5
          A:  Well, June 9th is a significant day because it goes back to 6/9 day, June 9th,
6         which is specific to a Skyline subset.

7              On June 9th, there was a party–like a carnival up at M.L.K. Block, 6500
          Block of Skyline.  There was a bunch of Skyline O'Farrell gang members hanging
8         out.  A car drove through the parking lot, and the car was occupied by a group
          of rival Lincoln Park Blood Gang members.  They mad-dogged him, gave them
9         mean stares as they passed through the lot.

10             The car subsequently parked, a bunch of rival gang members confronted
          the Skyline gang members at the carnival.   Police intervened, and the two
11        groups separated.

12             Maurice Tucker, who is from O'Farrell, goes by *Tuck Bo*, and Charles Neal,
          who goes by *Choo-Choo* from Skyline, were very upset of the fact that Lincoln
13        Park Bloods would come into Skyline gang territory and disrespect them by
          showing up at this carnival when they know that that's Skyline, not Lincoln Park.
14
               So Mr. Tucker and Mr. Neal decided to go out riding, put in work.  They
15        subsequently–they had a previous contact with a Lincoln Park gang member by
          the name of Stephen Cleveland a couple months prior at a Little Wayne concert.
16        They knew Mr. Cleveland lived over at the 200 block of 65th Street, which is in
          Skyline's area.  They drove down to Mr. Cleveland's house, saw him hanging out,
17        confronted him, subsequently shot and killed him.

18        Q:  Now, Mr. Cleveland, was he a Lincoln Park gang member?

19        A:  Yes, he was.
          Q:   And you mentioned that Mr. Tucker was an O'Farrell Park gang member; is
20        that right?

21        A:  That's correct.

22

23

1    Id. at 3409-11.  Further, the prosecution introduced a certified copy of Neal's 2010 conviction

2    for the second-degree murder of Stephen Cleveland, pursuant to Cal. Penal Code § 187(a).

3    See id. at 3411-12; see also id. at 74-79.

4         Finally, Detective Brown testified about the criminal activity of Adrian Cody, a Skyline

5    gang member, as follows:

6         Q:  [H]as Mr. Cody engaged in any behavior that forms this predicate pattern of
           criminal activity?

7
     A:  Yes, he has.
8
          Q:  What conduct are you aware of [that] Mr. Cody [has] committed?
9
     A:  In November of 2009, Adrian Cody, who was a Skyline gang member, Joseph
10        Brown, who is a Skyline gang member–I'm sorry.   No–O'Farrell Park gang
           member–Leon Moore, who was an O'Farrell Park gang member, and Diamond
11        Barbie, who is a Skyline gang member, drove to a medical marijuana place, a
           medical marijuana distribution . . . co-op, Mr. Cody stayed in the car, Mr. Brown,
12        Moore, and Barbie all entered the store.

13        Mr. Moore and Brown had handguns, they robbed the distillery of 25 jars
           of marijuana.  While Barbie and Moore were stealing the marijuana, Mr. Brown
14        was pistol-whipping the customers and the employees.  They subsequently fled
           the store, got into the gateway car which was driven by Mr. Cody.  One of the
15        clerks followed the car, the car subsequently crashed.

16        Mr. Brown, Mr. Moore and Mr. Barbie were arrested at the scene or in the
           close proximity of it.  The two guns and the medical marijuana were recovered
17        from the vehicle.

18        Mr. Cody left paperwork–probation paperwork, and his DNA was left on
           the air bag to the car, and he was subsequently convicted of the crime as well.
19

20   Id. at 3412-14.  The prosecution introduced a certified copy of Cody's conviction for aiding and

21   abetting a robbery in violation of Cal. Penal Code § 211.  Id. at 3414; see also id. at 80-90.

22        Additionally, as noted by the California Court of Appeal, the prosecution discussed each

23   of the above predicate crimes during closing argument in asserting that the Skyline gang had

1   engaged in a "pattern of criminal activity."  See id. at 4039-40; see also Lodgment 5 at 43-44.

2   Specifically, the prosecutor told the jury that:

> 3   Skyline has, in fact, committed a pattern of criminal activity that qualifies
> as primary activities.  The reason Skyline is different from any other organization
> 4   is that they exist to commit criminal acts, and they thrive on violent acts, and
> you heard about some of those:
>
> 5
>
> 6    Charles Neal, a known associated of Mr. Austin, committed a murder, and
> you heard a little bit about the context of that murder, that it was a murder
> related from some perceived disrespect by the murderers; you heard about
> 7   Jeovani Jackson, a rival of Skyline in which Mr. Jackson, I believe, shot at the
> victim in that particular case, not killing him.  You heard about Adrian Cody, the
> 8   Skyline gang member with O'Farrell Park gang members who robbed the
> marijuana dispensary for money and marijuana.   These are all part of their
> 9   enumerated patterns of criminal activity.

10   Lodgment 1 at 4039-40.

11   Furthermore, as correctly noted by the state appellate court, Petitioner's counsel did not

12   address whether the Skyline gang engaged in a "pattern of criminal activity" for purposes of

13   being a "criminal street gang" in his closing argument.  See Lodgments 1 at 4147-53; 5 at 44.

14   The attorney for Petitioner's co-defendant stated during his closing argument that:

> 15   The district attorney presented three what they call, predicate acts.
> That's these blue folders that we have.   One of them is a case from 2009,
> 16   January 2009; one is a case from 2007, and one is a case from–again 2009.
>
> 17    "In order to qualify as a primary activity the crime must be one of the
> group's chief or principal activities rather than an occasional act committed by
> 18   one or more persons who happen to be members of the group."  How would you
> ever prove that?  If you wanted to establish that murder was a primary activity
> 19   of the street gang and you knew that an occasional act of murder committed by
> one or more persons who happen to be members of the group is not enough,
> 20   what kind of evidence would you want?
>
> 21    Well, you would probably want a lot of evidence about activities, about
> crimes.  You would probably want a list of them, specifics.  You'd want dates,
> 22   you'd want defendants.  You'd want all kinds of evidence to establish that a
> particular crime was not just an occasional act committed by one or more
> 23   persons who happen to be members of the group.

1
2
3

> Did you get any of that through Detective Brown?  I don't recall any of that evidence being presented to you other than he said that's–in his opinion, these crimes are one of the principal activities, and that's all he did.  He didn't go any further.

4   Lodgment 1 at 4202-03.   Accordingly, Petitioner's co-defendant's counsel only disputed

5   whether the predicate offenses identified by Detective Brown were the Skyline gang's "primary

6   activities," but did not dispute that the three predicate offenses occurred or that they

7   constituted a "pattern of criminal gang activity."

8   Therefore, as discussed in detail above, at Petitioner's trial, the prosecution presented

9   Detective Brown's testimony that Skyline gang's primary activities included possession of

10  weapons, murders, shootings, robberies, drug deals, stolen cars, burglaries, and financial

11  crimes.  See id. at 3405.  Additionally, the prosecution presented evidence regarding three

12  predicate crimes: (1) on May 8, 2009, a Skyline gang member Jeovani Jackson pled guilty to

13  assault with a deadly weapon, and to gang and weapons allegations, (2) on October 2010, a

14  Skyline gang member Charles Neal was convicted of second degree murder, and (3) on

15  April 6, 2010, Skyline gang member Adrian Cody was convicted of aiding and abetting a

16  robbery.  See id. at 3406-14, 3708.  Further, the prosecution referenced the above predicate

17  offenses during closing and argued that they were "all part of [the Skyline Gang's] enumerated

18  patterns of criminal activity," and that the "Skyline gang [had] committed a pattern of criminal

19  activity that qualifies as primary activities."  Id. at 4039-40.  The trial court instructed the jury

20  as follows: "[y]ou may not find that there was a pattern of criminal gang activity unless all of

21  you agree that two or more crimes that satisfy these requirements were committed, but you

22  do not have to all agree on which crimes were committed," and that the prosecution had the

23  burden to prove each allegation of the enhancement beyond a reasonable doubt.  Id. at 113.

The jury found true the allegation pursuant to Cal. Penal Code § 186.22(b)(1) that Petitioner committed the offenses charged in counts 1-5 for the benefit of a criminal street gang.  Id. at 413-17.

Additionally, the three predicate offenses presented by the prosecution are listed in Cal. Penal Code 186.22(e) as establishing a "pattern of criminal activity," were committed on separate occasions, and within the time frame mandated by the statute.  Finally, as pointed out by the state appellate court, Plaintiff's counsel did not address the Skyline gang's alleged pattern of criminal activity during closing, and Petitioner's co-defendant's counsel only disputed whether the predicate offenses were the Skyline gang's "primary activities."  See id. at 4202-03.

A thorough review of the record reveals that the trial court's error in omitting the portion of CALCRIM No. 1401 defining the term "pattern of criminal gang activity" did not have a substantial and injurious effect or influence in determining the jury's verdict.  See Hines v. Harrington, 2010 WL 4025608, at *16-17 (C.D. Cal. Sept. 2, 2010) (analyzing the requirements of Cal. Penal Code § 186.22(e) to establish a "pattern of criminal gang activity" and finding that "to the extent the modified [CALCRIM No. 1401] instruction may have misrepresented the precise statutorily enumerated crimes that the jury must find, any instructional error was harmless because there was no reasonable possibility that the jury would not have found the gang allegations to be true had the challenged instruction more precisely defined the statutorily enumerated crimes," where, inter alia, the jury was presented with the evidence of prior convictions for crimes committed by other gang members, which were enumerated in the statute); see also Neder, 527 U.S. at 17 ("[W]here a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and

1  supported by overwhelming evidence, such that jury verdict would have been the same absent

2  the error, the erroneous instruction is properly found to be harmless."); <u>Brecht</u>, 507 U.S. at

3  637; <u>Hedgpeth</u>, 555 U.S. at 61-62.  Accordingly, this Court finds that the California Court of

4  Appeal's decision denying Petitioner's instructional error claim was neither contrary to, nor an

5  unreasonable application of, clearly established federal law.  The Court, thus **RECOMMENDS**

6  that this claim be **DENIED**.

7      **D.**    **<u>Ground Four</u>**

8      As set forth above, the Court interprets Ground Four as asserting the following claims:

9  the trial court erred in failing to bifurcate gang enhancement allegations from the substantive

10  crimes, ineffective assistance of trial counsel for failing to argue for bifurcation of the gang

11  allegations, and ineffective assistance of appellate counsel for failing to join Petitioner's co-

12  appellant's claim that the trial court erroneously denied a motion to bifurcate the gang

13  allegations.  <u>See</u> <u>supra</u> text accompanying note 3; <u>see also</u> Pet. at 15-16; Trav. at 25-27.

14  Respondent asserts that Petitioner received effective assistance of counsel, that his

15  "bifurcation claim was unavailing," and that Petitioner's claim in Ground Four is meritless.[7]

16  Ans. at 21-22.

17  ///

18

19

20  [7]  Respondent states that Petitioner's claim in Ground Four is subject to a procedural bar but
asserts that the claim is more easily resolved on the merits.  Ans. at 21-22.  Although the
Court has discretion to raise the procedural default issue sua sponte where "to do so serves
21  the interests of justice, comity, federalism, and judicial efficiency," <u>Windham v. Merkle</u>, 163
F.3d 1092, 1100 (9th Cir. 1998), the Court finds such interests would not be served.  <u>See</u>
22  <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not
infrequently more complex than the merits issues presented by the appeal, so it may well
23  make sense in some instances to proceed to the merits if the result will be the same.").

15cv309-BAS (BLM)

1      **1.   The Trial Court's Alleged Error in Failing to Bifurcate the Gang**

2      **Enhancement Allegations from the Substantive Crimes**

3      Petitioner argues that the trial court's refusal to bifurcate the gang enhancement

4   allegations from the substantive crimes "resulted in a totally unfair trial based on character

5   and propensity evidence," and "denied Petitioner's constitutional right to due process of law, a

6   fair trial, and a reliable guilt and penalty determination."  See supra text accompanying note 3,

7   see also Pet. at 15-16; Trav. at 25-26.  In support, Petitioner asserts that the prosecution was

8   allowed to "present a parade of police officers in front of the jury for two weeks," the jury

9   heard testimony that "Petitioner was a gang member and only cared about doing crimes of

10   robberies, [] murder, and rapes," and claims that the error had a substantial and injurious

11   effect on the jury's verdict.  See Pet. at 16; Trav. at 25-27.

12      The only court to address Petitioner's claim that the trial court erred by failing to

13   bifurcate the gang enhancements was the California Court of Appeal,[8] which stated the

14   following:

15      As the trial court here recognized in its well-reasoned discussion of the
         issue, a court has discretion to bifurcate trial issues, including enhancements.

16      (See *People v. Hernandez* (2004) 33 Cal.4th 1040, 1048; *People v. Calderon*
         (1994) 9 Cal.4th 69, 74-75.)  "In cases *not* involving the gang enhancement, we

17      have held that evidence of gang membership is potentially prejudicial and should
         not be admitted if its probative value is minimal.  [Citation].  But evidence of

18      gang membership is often relevant to, and admissible regarding, the charged
         offense.  Evidence of the defendant's gang affiliation—including evidence of

19      the gang's territory, membership, signs, symbols, beliefs and practices, criminal
         enterprises, rivalries, and the like—can help prove identity, motive, modus

20      operandi, specific intent, means of applying force or fear, or other issues

21   _____

22   [8]  In the California Court of Appeal, Petitioner joined his co-appellant's claim alleging a denial
     of fair trial resulting from the trial court's failure to bifurcate the trial of the gang enhancement

23   allegations from the underlying substantive offenses.  See Lodgment 3 at 45; see also
     Lodgment 5 at 17.  Petitioner did not raise the claim before the California Supreme Court on
     direct or collateral review.  See Lodgments 6 and 8.

pertinent to guilt of the charged crime.  [Citations.]  To the extent the evidence supporting the gang enhancement would be admissible at a trial of guilt, any inference of prejudice would be dispelled, and bifurcation would not be necessary.  [Citation.]"  (*People v. Hernandez*, *supra*, 33 Cal.4th at pp. 1049-1050.)  "Accordingly, when the evidence sought to be severed relates to a charged offense, the 'burden is on the party seeking severance to clearly establish that there is a substantial danger of prejudice requiring that the charges be separately tried.'"  (*Id.* at p. 1050.)

These rules guide our analysis.  Here, the trial court properly exercised its discretion when it denied defendants' motion to bifurcate because the gang evidence clearly was relevant to the charged offenses of both Price and Austin.  The gang enhancement codified in section 186.22, subdivision (b)(1) was attached to each of the charged offenses brought against Price and Austin.  Moreover, we note that like the defendant in *People v. Hernandez*, the record in the instant case shows that Austin and others in his group clearly and unequivocally made their gang status and affiliation relevant when they began flashing gang signs and making gang-related statements such as "Piru," "Blood," "this is Skyline" and "this is our area" when first demanding store employees give them the Hennessy and later, during the attack.

Indeed, the evidence in the record shows that the store was located in the heart of the Skyline gang's territory and that as soon as Austin and his group rushed the store, at least 10 to 15 other people—including Price, who was a member of the same or related gang as Austin—joined in the attack.  The record further shows that several Skyline gang members lived in homes in close proximity to the store.  This evidence supports the inference that the attack on the store employees was a coordinated effort by the gang.

Thus, the gang evidence was admissible to explain not only the reason these 10 or 15 additional people joined in the attack, as further explained by the People's gang expert that members of a gang are expected to back each other and put in work for the gang, but also to show the intent and motive of the group, including Price and Austin, in connection with the robbery of the Hennessey and/or the assault of the store employees who, despite the group's threats, refused to turn over the Hennessy.  (See *People v. Hernandez*, *supra*, 33 Cal.4th at p. 1050.)

That the jury heard testimony unrelated to the attack—including evidence of predicate acts of other members of the Skyline gang offered to prove the section 186.22, subdivision (b)(1) gang enhancement and evidence of prior contacts between law enforcement and Price and/or Austin in connection with their gang membership and affiliation—does not mean the trial court improperly exercised its discretion in denying bifurcation.  As recognized by our Supreme Court in *People v. Hernandez*, *supra*, 33 Cal.4th at page 1050, "[e]ven if some of

the evidence offered to prove the gang enhancement would be inadmissible at a trial of the substantive crime itself—for example, if some of it might be excluded under Evidence Code section 352 as unduly prejudicial when no gang enhancement is charged—a court may still deny bifurcation."  On this record, we conclude Price did not satisfy his burden to show a "substantial danger of undue prejudice" when the court denied his bifurcation motion.  *(Ibid.)*

We also agree with the People that any purported error by the trial court in refusing to bifurcate the gang enhancement allegations from the substantive chargers was harmless under any harmless error standard of review.  (See *Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Watson* (1956) 45 Cal.2d 818, 836).  As noted *ante*, most of the gang evidence admitted at trial was relevant to the substantive charges brought against Price and Austin on the issues of motive, intent and even identity.

In addition, the court instructed the jury regarding the limited use of the gang evidence, including that such evidence was not admissible to show a defendant was a person of "bad character" or had a "disposition to commit crime."  We presume the jury followed the court's instructions (see *People v. Wilson* (2008) 44 Cal.4th 758, 803), and there is nothing in the record in the instant case to suggest otherwise.  In fact, given that Price admitted he was a member of the Skyline gang and given the connection between the gang evidence and the substantive offenses as discussed *ante*, it appears the jury followed the court's instructions inasmuch as the jury acquitted Price of counts 1, 4 and 5.

Lodgment 5 at 21-25.

State evidentiary rulings are not cognizable in a federal habeas proceeding unless federal constitutional rights are affected.  See <u>Estelle</u>, 502 U.S. at 68; <u>Gordon v. Duran</u>, 895 F.2d 610, 613 (9th Cir. 1990).  Failure to bifurcate a gang enhancement fails to state a federal question.  See <u>Ramirez v. Almager</u>, 619 F. Supp. 2d 881, 900 (C.D. Cal. 2008); <u>see also</u> <u>United States v. Lane</u>, 474 U.S. 438, 446 n.8 (1986) ("Improper joinder does not, in itself, violate the Constitution.").  Accordingly, to the extent Petitioner argues that the state court erred in denying his motion to bifurcate the gang evidence, the claim does not present a federal question.

15cv309-BAS (BLM)

1    However, misjoinder violates the Constitution where it results in prejudice so great as to

2    deny a defendant his right to a fair trial.   <u>Lane</u>, 474 U.S. at 446 n.8; <u>see also</u> <u>Davis v.</u>

3    <u>Woodford</u>, 384 F.3d 628, 638 (9th Cir. 2004) (habeas relief unavailable unless joinder "actually

4    render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process");

5    <u>Sandoval v. Calderon</u>, 241 F.3d 765, 771-72 (9th Cir. 2000) (same).  The requisite prejudice is

6    established "if the impermissible joinder had a substantial and injurious effect or influence in

7    determining the jury's verdict."   <u>Id.</u> at 772 (citing <u>Bean v. Calderon</u>, 163 F.3d 1073, 1086 (9th

8    Cir. 1998)); <u>Davis</u>, 384 F.3d at 638.

9    In evaluating prejudice for failure to bifurcate, "the Ninth Circuit focuses particularly on

10   cross-admissibility of evidence and the danger of 'spillover' from one charge to another,

11   especially where one charge or set of charges is weaker than another."   <u>Davis</u>, 384 F.3d at

12   638 (citing <u>Sandoval</u>, 241 F.3d at 772 and <u>Bean</u>, 163 F.3d at 1084).   "[T]he risk of undue

13   prejudice is particularly great whenever joinder of counts allows evidence of other crimes to be

14   introduced in a trial where the evidence would otherwise be inadmissible."   <u>Sandoval</u>, 241 F.3d

15   at 772 (citation omitted).  However, prejudice "does not arise from joinder when the evidence

16   of each crime is simple and distinct, even in the absence of cross-admissibility."   <u>Bean</u>, 163

17   F.3d at 1085.  Petitioner bears the burden of demonstrating that the trial court's decision to

18   deny bifurcation rendered his trial fundamentally unfair.   <u>Park v. California</u>, 202 F.3d 1146,

19   1149 (9th Cir. 2000).

20   In this case, the trial court found that "there [wa]s not a sufficient basis to conclude

21   that there [wa]s a substantial danger of prejudice if the allegations [we]re not bifurcated," and

22   reasoned as follows:

23

15cv309-BAS (BLM)

[T]he real question is: if the People's theory is that the crime was committed, the motivation for the crime was in association with gang activity. Assuming a bifurcation, what evidence that would come in with the allegation would not come in without it if the motivation is that this was committed for the benefit of the gang?  Because obviously if the same evidence would come in irrespective, there's no basis for bifurcating the allegation.

. . .

[Defense counsel] argues there's no evidence of gang—there's no evidence of intent when they pulled up.  I can't say there's no evidence without hearing the evidence.  But clearly the People are going to be relying on and proving intent and gang affiliation or gang intent circumstantial evidence, and the jury is going to be instructed at the end of trial, if there are two reasonable interpretations, one points to innocence and one points to guilt, then they must accept the interpretation consistent with innocence.

But that's very different from saying that there is no evidence of something.  The evidence is circumstantial; it's for the jury to decide what it proves.  That's the court's obligation during in limine hearings to try the case and decide whether it's the defense version that's true or the People's version.  Obviously they are two very different versions, and there may be three very different versions.  I don't know.  But certainly the People's version was all of this was gang related.

. . .

So evaluating the People's theory of the case and the offer of proof—and that's all I can go by at this point is the offer of proof and keeping in mind what the defense theory of the case is—I find that *there is not a sufficient basis to conclude that there is a substantial danger of prejudice if the allegations are not bifurcated, so I'm going to deny the request for bifurcation of the gang allegations* at this time.

Lodgment 1 at 1160-61, 1192-93, 1199 (emphasis added).   After the conclusion of the percipient witness testimony, Petitioner's trial counsel and Price's counsel renewed their motion to bifurcate, arguing that the trial evidence mandated bifurcation.  Id. at 2901-02.  The trial judge denied the motion, stating that: "[t]here is nothing in the evidence that I've heard that would cause me to change my previous ruling, so the request to bifurcate is denied."  Id. at 2903.

1       The Ninth Circuit evaluates prejudice for failure to bifurcate by focusing on cross-

2   admissibility of evidence and the danger of spillover from one charge to another.  See Davis,

3   384 F.3d at 638; Sandoval, 241 F.3d at 772; Bean, 163 F.3d at 1084.  As discussed in detail

4   earlier in this Report and Recommendation, the trial evidence established that Petitioner was a

5   documented Skyline gang member, the Moonlight Liquor store, where the events at issue

6   occurred, was located in the Skyline's gang territory, and Petitioner and other members of his

7   group injected their gang status and affiliation into the substantive crimes by threatening store

8   employees, flashing gang signs, and making gang-related statements prior to and during the

9   commission of the crimes.  Lodgment 1 at 2155-56, 2160-61, 2165, 2299, 2469, 3399-3401,

10  3404, 3495-96.  As such, the gang evidence was relevant to the substantive charges brought

11  against Petitioner and the trial and appellate courts correctly concluded that most of the gang

12  evidence would have been admissible in a separate trial to prove Petitioner's motive, intent

13  and identity.  Such "cross-admissibility dispels the prejudicial impact of joining all counts in the

14  same trial."  See Sandoval, 241 F.3d at 772; see also Windham, 163 F.3d at 1103-04 (finding

15  that the admission of gang evidence did not violate defendant's right to fair trial, in violation of

16  due process, where the gang evidence was relevant to establish motive in committing the

17  charged crimes); Bernoudy v. Adams, 2011 WL 4500047, at *7 (C.D. Cal. June 21, 2011)

18  (finding that "testimony regarding gang codes of territorialism, respect and disrespect,

19  intimidation, and backing each other up, was highly relevant to establish a possible motive for

20  [petitioner's] crime," where petitioner was a member of the 87 Gangster Crip gang, the crime

21  was committed in the "heart" of the gang's territory, and petitioner and his cohorts felt that

22  they had been disrespected).

23

15cv309-BAS (BLM)

1   However, as noted by the trial court, evidence of the predicate crimes committed by

2   other Skyline gang members which was offered during Petitioner's trial to establish the gang

3   allegations under Cal. Penal Code § 186(b)(1) would not have been cross-admissible.   The

4   potential prejudicial impact of this evidence was minimized because the evidence was

5   presented in summary fashion by a police detective and via certified conviction documents.

6   See Lodgment 1 at 3405-14; see also supra pp. 37-40.  In addition, the trial court instructed

7   the jury that the gang evidence was not admissible to show that Petitioner was a person of

8   "bad character" or had a "disposition to commit crime," and that the jury could not be

9   influenced by prejudice or sentiment.   See Lodgment 1 at 91, 114-15; CALCRIM No. 1403;

10   CALCRIM No. 200; see also Weeks v. Angelone, 528 U.S. 225, 234 (2000) (stating that a jury

11   is presumed to follow the judge's instructions); Fields v. Brown, 503 F.3d 755, 782 (9th Cir.

12   2007) (citing Kansas v. Marsh, 548 U.S. 163, 179 (2006)) (same).  Petitioner has not provided

13   any evidence that the jury did not follow the trial court's instructions.

14   Finally, this case did not involve a situation where a strong evidentiary case was joined

15   with a much weaker case "in the hope that the cumulation of the evidence would lead to

16   convictions in both cases."  See Sandoval, 241 F.3d at 772.  As discussed in more detail

17   throughout this Report and Recommendation, there was overwhelming evidence establishing

18   Petitioner's guilt for the substantive crimes and for the gang enhancement allegations.

19   Accordingly, in light of the strength of the evidence against Petitioner on both the

20   substantive crimes and the gang enhancement allegations, the cross-admissibility of the vast

21   majority of the evidence, the limiting instructions given to the jury, and the manner in which

22   gang evidence that was not cross-admissible was presented, Petitioner has not established

23   that his due process rights were violated, that he received an unfair trial, or that he was

15cv309-BAS (BLM)

unduly prejudiced by the trial court's refusal to bifurcate.  See <u>Haygood v. Walker</u>, 2010 WL 7408533, at *17 (S.D. Cal. July 23, 2010) (finding no prejudice resulting from the trial court's refusal to bifurcate the gang enhancement allegation, where the gang evidence was admissible to prove petitioner's motive and intent); <u>Sandoval</u>, 241 F.3d at 772-73 (finding that petitioner was not prejudiced by joinder of murder and attempted murder charges, where evidence from each set of offenses would have been admissible at trial for other offenses in light of evidence linking all offenses, and where the state's case against petitioner on both sets of crimes was strong); <u>Palma v. Cate</u>, 2012 WL 1059925, at *7-8 (S.D. Cal. Mar. 28, 2012) (concluding that petitioner's constitutional rights were not violated by the trial court's refusal to bifurcate the gang enhancement because the jury "would have been made aware of a significant amount of gang testimony even if there had been separate trial"); <u>Cisneros v. Harrington</u>, 2012 WL 3150610, at *15-16 (C.D. Cal. Jan. 31, 2012) (finding that the trial court's failure to bifurcate did not violate petitioner's due process, where the gang allegation was "inextricably intertwined with the charged offenses," and where, inter alia, petitioner was tied to the TMC gang and the crime was committed in the area that was being taken over by the TMC gang).

### 2.    **Ineffective Assistance of Counsel**

Petitioner also appears to allege that his trial counsel was ineffective for failing to argue for bifurcation of the gang allegations, and that his appellate counsel rendered ineffective assistance because he failed to join Petitioner's co-appellant's claim that the trial court erroneously denied a motion to bifurcate gang allegations.  See <u>supra</u> text accompanying note 3; <u>see also</u> Pet. at 79, 82, 102-03; Trav. at 24-26.  In support, Petitioner merely argues that he was prejudiced by the admission of evidence relating to his gang membership.  See

Pet. at 15-16; Trav. at 24-26.   Respondent maintains that Petitioner received effective assistance of counsel.  Ans. at 21-22.

Under clearly established federal law, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland v. Washington, 466 U.S. 668, 686 (1984).   To prove ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.   Id. at 687.   The proper measure of attorney performance is "simply reasonableness under prevailing professional norms."   Id. at 688.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  Id. at 689-90.  To determine whether errors of counsel prejudiced the defense, a court "must consider the totality of the evidence before the judge or jury" and consider whether "the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."  Id. at 696.   The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing of either one.  Id. at 697.

The Strickland standard applies equally to claims of ineffective assistance of appellate counsel.  Bailey v. Newland, 263 F.3d 1022, 1028 (9th Cir. 2001), cert. denied, 535 U.S. 995 (2002).  "Defense counsel does not have a constitutional duty to raise all nonfrivolous issues on appeal."  McGee v. Dexter, 2010 WL 2044526, at *11 (C.D. Cal. April 19, 2012) (citing Pollard v. White, 119 F.3d 1430, 1435 (9th Cir. 1997)).  "Appellate counsel's failure to raise an

issue on direct appeal cannot constitute ineffective assistance when the 'appeal would not have provided grounds for reversal.'"  Id. (quoting Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001)).

### (a)   Ineffective Assistance of Trial Counsel

Petitioner's claim that his trial counsel was ineffective because he failed to argue for bifurcation of the gang allegation from the underlying charges fails on both prongs.  See Pet. at 9; Trav. at 24-26.   Before trial, Petitioner's attorney moved to bifurcate the gang enhancement allegations from the substantive crimes.  See Lodgment 1 at 1158-59; see also id. at 1189.  On August 17, 2011, the trial court held an in limine hearing on Petitioner's motion to bifurcate and after extensive arguments by the parties, denied the motion.  Id. at 1160-91, 1199.   On September 1, 2011, after the completion of the percipient witness testimony, Petitioner's trial counsel renewed the motion to bifurcate, arguing that the trial evidence established the requisite danger of prejudice requiring bifurcation.  Id. at 2900-03. The trial court considered counsel's argument but concluded that the trial evidence did not change his pretrial ruling and denied the renewed motion to bifurcate.   Id. at 2903. Accordingly, the undisputed evidence establishes that Petitioner's trial counsel acted reasonably because he was aware of the legal issue and argued appropriately and forcefully for bifurcation on two separate occasions.  The fact that the trial court ruled against counsel does not make counsel's performance constitutionally deficient. See Viltz v. McEwen, 2013 WL 5775337, at *24-25 (S.D. Cal. Oct. 25, 2013) (finding that Petitioner's trial counsel's conduct was reasonable and that the trial counsel was not ineffective, where the counsel argued his position to the court, but lost the motion).

Even if Petitioner could establish that his trial counsel's conduct was constitutionally deficient, Petitioner has not established "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." <u>See</u> <u>id.</u> at 694.  Petitioner does not identify what actions counsel should have taken or how such actions would have resulted in a different result.  As discussed above, the majority of the gang evidence admitted at trial was relevant to the substantive crimes on the issues of motive, intent and identity, the trial court minimized any prejudice by instructing the jury on the limited use of the gang evidence, and the evidence that was not cross-admissible was presented in a summary, non-inflammatory fashion.  As such, and as held by the appellate court, the trial court correctly determined that bifurcation was not warranted.  Petitioner thus fails to establish that he was prejudiced by his counsel's alleged deficient performance and cannot satisfy his burden under <u>Strickland</u>.

### (b)   <u>Ineffective Assistance of Appellate Counsel</u>

To the extent Petitioner alleges that his appellate counsel was ineffective because he failed to join Petitioner's co-appellant's claim that the trial court erroneously denied a motion to bifurcate gang allegations, the claim also fails on both prongs.  <u>See</u> Pet. at 9, 79, 82, 102-03; Trav. at 24.  Petitioner's appellate counsel specifically stated in his brief to the California Court of Appeal that Petitioner "joins in the issues, points, and authorities raised by his co-appellant that may redound or accrue to his benefit."  Lodgment 3 at 45.  One of the claims raised by Petitioner's co-appellant Price in his appeal to the California Court of Appeal alleged a denial of a fair trial resulting from the trial court's refusal to bifurcate gang allegations from the substantive offenses.  <u>See</u> Lodgment 5 at 17; <u>see also</u> Pet. at 83-100.  The California Court of Appeal acknowledged in its opinion that "Price joined in any and all contentions raised by

15cv309-BAS (BLM)

[Petitioner] that would accrue to his benefit and *vice versa*," and addressed the merits of the bifurcation claim.  <u>See</u> Lodgment 5 at 3 n.3 (emphasis added); <u>id.</u> at 17-25.  As such, contrary to Petitioner's assertions, his appellate counsel did join Price's claim alleging that the trial court erroneously denied a motion to bifurcate gang allegations.  Petitioner thus cannot establish that his appellate counsel's performance was deficient.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687; <u>Bailey</u>, 263 F.3d at 1028.

Even if Petitioner could satisfy the first prong of the ineffective assistance of counsel test, he has not and cannot satisfy the second prong.  As discussed above, the California Court of Appeal specifically considered the claim that the trial court erroneously denied the motion to bifurcate gang allegations and found that the trial court's refusal to try the gang allegations separately from the substantive offenses did not result in an unfair trial.  <u>See</u> Lodgment 5 at 17-25.  Because the state appellate court considered Petitioner's bifurcation claim and denied it, Petitioner has not shown that he was prejudiced by his appellate counsel's alleged failure. <u>See</u> <u>Strickland</u>, 466 U.S. at 692; <u>Bailey</u>, 263 F.3d at 1028.

Petitioner fails to establish that his trial and appellate counsels' performances were deficient or that the allegedly deficient performances prejudiced his defense.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687.  Petitioner also fails to establish that his due process rights were violated by the trial court's refusal to bifurcate gang allegations from the substantive charges brought against him.  The Court therefore finds Petitioner's claims in Ground Four to be without merit and **RECOMMENDS** that they be **DENIED**.[9]

_____

[9]  The Court reaches the same conclusion regardless of whether the claims are reviewed de novo or reviewed utilizing the deferential AEDPA standard of review to the appellate court's reasoned denial of the trial court's failure to bifurcate and the California Supreme Court's denial of the ineffective assistance of appellate counsel.  <u>See</u> <u>Harrington</u>, 562 U.S. at 99-102;

1

### E. **Cumulative Errors Claim**

2

Petitioner appears to raise a new claim in his Traverse arguing that "the cumulative

3

errors of [his] trial denied [him] his rights to a fundamentally fair trial and due process."  Trav.

4

at 26-28.  In support, Petitioner claims that there was insufficient evidence to support his

5

robbery conviction, that the trial court failed to properly give a lesser included theft instruction,

6

omitted a portion of CALCRIM No. 1401 definition of a pattern of criminal gang activity, and

7

failed to bifurcate gang allegations.[10]

8

If the claim is not presented in the Petition but is presented for the first time in the

9

Traverse, the Court has discretion to consider it or refuse to consider it because Petitioner was

10

specifically warned in this Court's March 24, 2015 Order directing a response to the Petition

11

[ECF No. 6 at 3] that his Traverse "shall not raise new grounds for relief that were not

12

asserted in the Petition."  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994)

13

(stating that court may ignore issue raised for first time in traverse when scope of traverse has

14

been specifically limited by court order and petitioner ignores order to file a separate pleading

15

indicating intent to raise claim); see also Delgadillo v. Woodford, 527 F.3d 919, 930 n.4 (9th

16

Cir. 2008) ("Arguments raised for the first time in petitioner's reply brief are deemed

17

---

18

see also Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002) (holding that when the state

19

court reaches the merits of the claim but provides no reasoning to support its conclusion, "although we independently review the record, we still defer to the state court's ultimate decision"); Frantz v. Hazey, 533 F.3d 724 (9th Cir. 2008) (en banc) (holding that even if state

20

court does not address the constitutional issue, where the reasoning of the state court is relevant to resolution of the constitutional issue, that reasoning must be part of federal habeas

21

court's consideration even under a de novo review).

22

[10]  Petitioner did not include his ineffective assistance of counsel claim in his cumulative errors argument (see Trav.), but even if the claim were included, the Court's conclusion would not

23

change.

waived."); Collins v. Uribe, 564 F. App'x 343, 343-44 (9th Cir. 2014) (same); but see Boardman v. Estelle, 957 F.2d 1523, 1525 (9th Cir. 1992) (holding that district court erred in failing to address issue raised in traverse). The Court will exercise its discretion to consider this claim because Petitioner's allegations that the accumulation of the alleged trial errors in his case violated his federal constitutional rights are intertwined with the other claims in his Petition.

The Ninth Circuit recognizes that the combined effect of discrete trial errors, even when none of them individually warrants relief, can in some circumstances have a substantial and injurious effect on the jury's verdict. See Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 294, 302-03 (1973)); Alcala v. Woodford, 334 F.3d 862, 882-83 (9th Cir. 2003)). Relief for cumulative prejudice necessarily presupposes that the Court will find substantial error occurred in connection with at least one of the petitioner's claims. See Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011) ("Because we conclude that no error of constitutional magnitude occurred, no cumulative prejudice is possible.") (citation omitted); United States v. Larson, 460 F.3d 1200, 1217 (9th Cir. 2006) (rejecting cumulative error claim where the court discovered no error in the defendants' trial). Petitioner has not established that any constitutional error occurred in his case. See supra, Sections A-D. Accordingly, the Court **RECOMMENDS** that Petitioner's cumulative error claim be **DENIED**.

## F.    Request for Evidentiary Hearing

Petitioner requests that the Court conduct an evidentiary hearing. See Pet. at 16; Trav. at 8, 19. A federal court's discretion to hold an evidentiary hearing is governed by 28 U.S.C. § 2254(e)(2), which provides:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—
    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously made unavailable; or

    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

"Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." Williams v. Taylor, 529 U.S. 420, 437 (2000). Here, Petitioner generally argues that he "raises a colorable claim for relief," and that in cases "where there has not been a state or federal hearing on the[] claim[s], the court must grant a hearing." Pet. at 16. However, Petitioner does not establish that his request relies on a new rule of constitutional law, or a factual predicate that could not have been previously discovered through the exercise of due diligence. See id.; Trav. Similarly, Petitioner has not alleged facts that would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. See id. Accordingly, the Court **DENIES** Petitioner's request for an evidentiary hearing.

## **CONCLUSION AND RECOMMENDATION**

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

1     **IT IS HEREBY ORDERED** that no later than <u>**February 26, 2016**</u>, any party to this

2 action may file written objections with this Court and serve a copy on all parties.   The

3 document should be captioned "Objections to Report and Recommendation."

4     **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

5 Court and served on all parties no later than <u>**March 25, 2016**</u>.   The parties are advised that

6 failure to file objections within the specified time may waive the right to raise those objections

7 on appeal of the Court's order.   <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

8     **IT IS SO ORDERED**.

9

10 Dated:  1/29/2016

11 Hon. Barbara L. Major
United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

59

15cv309-BAS (BLM)